STATE of Minnesota, Petitioner, Appellant,

v.

Douglas R. ERRINGTON, Respondent.

No. 81–289.

Supreme Court of Minnesota.

Oct. 6, 1981.

Warren Spannaus, Atty. Gen., and Erica Jacobson, Sp. Asst. Atty. Gen., St. Paul, Bernard E. Borene, City Atty., Northfield, for appellant.

Hvistendahl & Moersch and David Hvistendahl, Northfield, for respondent.

Paul Onkka, Southern Minnesota Regional Legal Services, Carver, Phyllis Gelman, National Coalition Against Domestic Violence, New York City, Barbara J. Johnson, Local Counsel, St. Paul, for Minnesota Coalition for Battered Women; Aviva Futorian, Women's Law Project of the Legal Assistance Foundation of Chicago, Chicago, Ill., of counsel.

SHERAN, Chief Justice.

This is a discretionary appeal, pursuant to Minn.R.Crim.P. 29.03, from an order of a three-judge district court panel affirming an order of the county court which dis-

missed a prosecution of defendant on three contempt charges based on his alleged violations of protective orders issued under the Domestic Abuse Act, Minn.Stat. § 518B (1980). The dismissals were based on the county court's conclusion that certain provisions of the Act violated the separation-of-powers doctrine by ordering courts to perform functions which, if a court performs them, create the appearance that the court has become a biased advocate for one party in a dispute. Holding that the Act, as we interpret it, does not violate the separation-of-powers doctrine and does not require courts to perform nonjudicial functions, we reverse and remand for trial.

The Domestic Abuse Act was enacted in 1979 to provide an efficient remedy for victims of abuse as an alternative to other available legal remedies—such as criminal charges, tort claims, or divorce—which victims are sometimes reluctant, unable or unwilling to use. Under the Act, any family or household member, including one who has left the household in order to avoid abuse, may file a simple petition seeking relief from certain specified types of domestic abuse. If the petitioner alleges an immediate and present danger of abuse, the court may grant an *ex parte* temporary order which is effective for a maximum of 14 days. If the court grants an *ex parte* temporary order, then the court must hold a full hearing within 7 days after the issuance of the temporary order. On the other hand, if the court does not grant an *ex parte* temporary order, then the full hearing must be held within 14 days of the filing of the petition. The Act sets forth six kinds of relief which the court may grant, including a restraining order. Any relief ordered must be for a fixed period not to exceed 1 year. Knowing violation of any order of protection under the Act is a misdemeanor and also constitutes contempt of court subjecting the abusing party to the penalties therefor. For a full discussion of the Act, see Gorlin and Tanick, *New Domestic Abuse Act Implemented in Hennepin County*, 49 Hennepin Lawyer No. 2, p. 8 (1979).

Subsections (d) and (e) of Minn.Stat. § 518B.01, subd. 4 (1980), are the parts of the Act which the county court and district court panel declared unconstitutional. Those subsections provide:

(d) The court shall provide simplified forms and clerical assistance to help with the writing and filing of a petition under this section by any person not represented by counsel.

(e) The court shall advise a petitioner under clause (d) of the right to file a motion and affidavit and to sue in forma pauperis pursuant to section 563.01 and shall assist with the writing and filing of the motion and affidavit.

We need not detail the allegations of fact underlying the contempt charges against defendant; it is sufficient to say that there were three separate charges based on his alleged violations of protective orders issued under the provisions of the Act.

The state impliedly concedes in its brief that the statute, if interpreted as requiring judges to perform the functions in question, violates the separation-of-powers doctrine, but the state argues that the challenged subsections can be saved if this court interprets the word "court" in those subsections as meaning "clerk of court" because it was settled in *In re Clerk of Lyon County Courts*, 308 Minn. 172, 173–74, 241 N.W.2d 781, 782–83 (1976), that the legislature has shared power under the constitution to order clerks of court to perform certain functions.

We agree with the state that there is no indication that the legislature, in enacting the statute, intended to infringe upon any of the powers of the judicial branch. The Minnesota Legislature is but one of many state legislatures which have enacted domestic abuse acts—Gorlin and Tanick, *New Domestic Abuse Act Implemented in Hennepin County*, 49 Hennepin Lawyer, No. 2, p. 8 (1979)—and a number of these acts contain identical or nearly identical provisions, some of which are quoted in the briefs.

Under the circumstances, we are disposed to adopt the interpretation offered by the state if that interpretation is reasonable and fair.

The main arguments advanced by defendant and credited by the lower courts are that the subsections involve personnel of the clerk of court's office in unauthorized practice of law and create the appearance that court personnel, by aiding the petitioners, are biased in the petitioner's favor. The state's main response is that personnel of the clerk of court's office, pursuant to court rule, routinely help parties in filing conciliation court pleadings and advise them of the procedures used, the only difference being that in the domestic abuse situation the assistance is given only to the party alleging abuse, whereas in the conciliation court setting the assistance is given to any party, plaintiff, or defendant, who asks for it.

We believe that the ministerial functions in question do not constitute the practice of law any more than the giving of a *Miranda* warning by a police officer to a defendant constitutes the practice of law. Further, as long as the judges, their law clerks, and other support staff intimately connected with them do not play a role in assisting the petitioner, we do not believe the alleged abusing party has any reasonable basis for thinking the court is biased against him. In short, we are not persuaded by the arguments that it would be unreasonable to give the statutory provisions the interpretation urged on this court by the state.

Even if we decided not to interpret the provisions of the Act as the state suggests, it would not necessarily follow that the dismissal was proper.[1] However, in view of our interpretation of the provisions of the Act, it is clear that the order of the district court affirming the county court's dismissal of the charges must be reversed and the matter remanded for trial.

Reversed and remanded.

1. In *Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), the United States Supreme Court upheld a state rule that violation of any court ordered injunction may be punished by contempt, even when the injunction requires compliance with an unconstitutional law, provided the court issuing the injunction had jurisdiction to do so. In that case, the Court affirmed contempt convictions based on conduct of people who bypassed orderly judicial review of a temporary injunction against mass street parades and disobeyed the injunction. In its opinion, the Court stated that there was grave doubt about the constitutionality of the injunction and the ordinance on which it was based, but that the constitutional invalidity of an injunction or ordinance was not a defense under the state's law to the contempt charge when there were available procedures for judicial review of the validity of the injunction and the ordinance. For an excellent explanation of this rule, see *United States v. Dickinson*, 465 F.2d 496, 509–510 (5th Cir. 1972), *on remand*, 349 F.Supp. 227 (M.D.La.1972), *affirmed*, 476 F.2d 373 (5th Cir. 1973), *cert. denied*, 414 U.S. 979, 94 S.Ct. 270, 38 L.Ed.2d 223 (1973). Some states allow a defendant to raise as a defense to a criminal contempt charge the invalidity of the statute on which the disobeyed court order was based, at least where the statute on which the order was based was unconstitutional. We need not decide which approach to follow in Minnesota, but *see Wojahn v. Halter*, 229 Minn. 374, 39 N.W.2d 545 (1949).