Linda Rae BURKSTRAND,
Petitioner, Appellant,

v.

Steven Glen BURKSTRAND,
Respondent.

No. C0–00–813.

Supreme Court of Minnesota.

Aug. 30, 2001.

Brian L. Sobol, A. Larry Katz, Katz & Manka, Ltd., Minneapolis, for appellant.

John G. Westrick, Marcia McDowall–Nix, Westrick & McDowall–Nix P.L.L.P., St. Paul, for respondent.

Bruce A. Beneke, Janet C. Werness, St. Paul, for amicus curiae.

## OPINION

BLATZ, Chief Justice.

This case presents the question of whether the expiration of the hearing time frames prescribed by the Domestic Abuse Act, specifically Minn.Stat. § 518B.01, subdivision 7(c) (2000), divests the district court of subject matter jurisdiction to hold a hearing on a petition for an order for protection. The court of appeals determined that the district court erred, as a matter of law, in issuing an order for protection for appellant Linda Rae Burkstrand because the district court lacked subject matter jurisdiction to hold a hearing on her petition outside the statutory time frame for conducting a hearing. We reverse.

On December 28, 1999, appellant filed a petition and supporting affidavit for an ex parte order for protection against her husband, respondent Steven Glen Burkstrand. The petition requested various types of relief including restraining respondent from acts of abuse; excluding respondent from the family residence and the children's schools; awarding appellant temporary custody of the children; and directing respondent to provide monetary support. A more limited ex parte order for protection was issued that same day restraining and enjoining respondent from abusive acts against appellant and the children, prohibiting respondent from having contact with appellant, and excluding him from the residence except to retrieve personal effects. The ex parte order also commanded respondent to appear before a referee[1] on January 6, 2000, prepared to testify and to present evidence, and stated that the order was effective until the scheduled hearing.

Respondent filed an affidavit on January 5, 2000, refuting appellant's allegations of abuse. The next day, the parties appeared with counsel before a referee. Respondent contested the order for protection and again denied the allegations of abuse, and appellant agreed to withdraw the issue of abuse against the children from the petition. The referee was informed that respondent had commenced a separate action for dissolution of the marriage; therefore, several of appellant's requests for relief were deferred to that action, and the only issue remaining before the referee was the petition based on respondent's alleged abuse of appellant.

To address that issue, the referee suggested that an evidentiary hearing commence that morning, as soon as the refer-

---

**1.** The Domestic Abuse Act authorizes referees to act for the district court in performing certain duties. Minn.Stat. § 518B.01, subd. 3 (2000).

ee finished hearing first appearances. Appellant's counsel notified the referee that he had a conflicting court appearance, and the referee agreed to hear the rest of the calendar and return to the matter later in the day. Due to a full calendar, however, a hearing was not possible and the referee continued the matter to the following afternoon, January 7. On January 7, respondent's counsel was ill, and the hearing was again continued. The record indicates that on or about January 18, 2000, the referee and counsel conducted a telephone conference, during which appellant's counsel requested that the hearing be continued until February to accommodate counsel's vacation. Respondent, however, demanded that the hearing proceed that week. As a result, the hearing was scheduled for January 21, 2000. At the January 21, 2000 hearing, appellant again sought to continue the matter. The referee denied the motion to continue and the hearing proceeded.

Based on evidence presented at the hearing, the referee issued an order for protection valid for one year from January 21, 2000.[2] Respondent then retained new counsel and filed a notice of review under Minn.Stat. § 484.65, subd. 9 (2000).[3] Respondent argued that the referee lacked jurisdiction to hear and decide the case on January 21 because a full hearing on the petition was not held by the statutory deadline. Respondent also argued that there was insufficient evidence to warrant issuance of a protection order. The district court found "no error with the Refer-

ee's Order" and affirmed the January 21, 2000 order for protection in its entirety.

At the court of appeals, Steven Burkstrand argued again that the district court[4] lacked subject matter jurisdiction to conduct a hearing on January 21, because the statutory time frames for conducting a hearing on a petition for an order for protection had passed. Thus, he argued that the order for protection issued on that date was void *ab initio*. Linda Burkstrand responded that the court did not lose jurisdiction over the petition, and in the alternative, that her husband waived his right to object to the January 21 hearing as being untimely because his counsel requested the continuance because of his own illness and did not request that the matter be rescheduled within the statutory time period. The court of appeals concluded that the district court lacked subject matter jurisdiction and reversed. *Burkstrand v. Burkstrand*, No. C0–00–813, 2000 WL 1847671, at *2 (Minn.App. Dec.13, 2000).

In this appeal, appellant Linda Burkstrand argues that the district court retained jurisdiction to issue an order for protection despite the court's failure to adhere to the hearing time parameters of Minn.Stat. § 518B.01, subd. 7(c). She also contends that the 1995 amendments to Minn.Stat. § 518B.01 require interpretation and clarification. Finally, she again argues that respondent waived any right to object to the timeliness of the hearing.

The parties ask us to interpret the language of the Domestic Abuse Act

---

**2.** Because the order for protection expired on January 21, 2001, this issue is arguably moot. However, we granted review to decide an issue capable of repetition, yet evading judicial review. *See State ex rel. Doe v. Madonna*, 295 N.W.2d 356, 361 (Minn.1980).

**3.** Minnesota Statutes § 484.65, subd. 9, provides that a referee's recommended orders

and findings are subject to confirmation by a district court judge. Notice of review must be served and filed within 10 days of effective notice of the recommended order or findings at issue. *Id.*

**4.** Hereafter, we refer to the referee and district court interchangeably.

and the effect of its 1995 amendments to determine whether the district court's failure to hold a hearing on appellant's petition within the statutory time frames divests the court of subject matter jurisdiction over the petition. We review issues of subject matter jurisdiction de novo. *Handicraft Block Ltd. P'ship v. City of Minneapolis,* 611 N.W.2d 16, 19 (Minn.2000). Statutory interpretation is also a question of law subject to de novo review. *Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

The Domestic Abuse Act provides a process whereby domestic abuse victims may petition for protection and relief. Minn. Stat. § 518B.01 (2000); *State v. Errington,* 310 N.W.2d 681, 682 (Minn.1981). A victim files a petition and supporting affidavit for an order for protection alleging the existence of domestic abuse and requesting specific types of relief. Minn.Stat. § 518B.01, subd. 4 (2000). If the petition "alleges an immediate and present danger of domestic abuse, the court may grant an ex parte order for protection * * *." *Id.,* subd. 7(a).

In 1995, the legislature amended portions of subdivision 7 of the Act, which deals specifically with ex parte orders. Immediately before the 1995 amendments, subdivision 7(c) required:

an ex parte temporary order for protection shall be effective for a fixed period not to exceed 14 days, except for good cause as provided under paragraph (d). A full hearing, as provided by this section, shall be set for not later than seven days from the issuance of the temporary order. The respondent shall be served forthwith a copy of the ex parte order

along with a copy of the petition and notice of the date set for the hearing. Minn.Stat. § 518B.01, subd. 7(c) (1994). The 1995 amendments eliminated the 14–day time period for the effectiveness of an ex parte order for protection and eliminated the initial requirement that a hearing be held within 7 days of issuance of an ex parte order for protection. Act of May 10, 1995, ch. 142, § 5, 1995 Minn. Laws 402, 405. Since adoption of the 1995 amendments, subdivision 7(c) reads:

Subject to [certain service requirements], an ex parte order for protection shall be effective for a fixed period set by the court, [up to one year, except when the court determines that a longer period is appropriate], or until modified or vacated by the court pursuant to a hearing. Upon *request,* a full hearing, as provided by this section, shall be set for not later than seven days from the issuance of the ex parte order, if a hearing is requested by the petitioner, or not later than ten days or earlier than eight days from receipt by the court of a request for a hearing by the respondent.

Minn.Stat. § 518B.01, subd. 7(c) (2000) (emphasis added). This change to subdivision 7(c) allows for some ex parte orders to remain effective for a fixed period without a hearing. The 1995 legislature also amended subdivision 7 to explicitly require the petitioner who has obtained an ex parte order to request a hearing to be held within 7 days in cases where the petitioner asks for certain types of relief, including the temporary custody and monetary support requested here. Act of May 10, 1995, ch. 142, § 5, 1995 Minn. Laws 402, 405, codified at Minn.Stat. § 518B.01, subd. 7(e) (2000).[5] The parties disagree as to the

5. Appellant argues that Hennepin County's forms and procedures do not reflect the requirements of the current statute because they require a hearing within 14 days for every ex

parte order, when, under the statute, there are some circumstances when a hearing is not required and other circumstances when shorter hearing time frames are established.

plain meaning of the statutory language as well as the legislative intent behind the 1995 amendments. The parties also dispute the role of Minn.Stat. § 518B.01, subdivision 5(a), which sets forth a 14–day hearing time frame on petitions for orders for protection when no ex parte order for protection has issued. Minn.Stat. § 518B.01, subd. 5(a) (2000) .[6]

When interpreting statutes our goal "is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2000). When the language of a statute is plain and unambiguous, it is assumed to manifest legislative intent and must be given effect. *Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn. 1986); *see* Minn.Stat. § 645.16. However, if a statute is ambiguous, we may ascertain the legislature's intent by considering a number of matters, including the legislative history, the necessity for the law, and the consequences of various interpretations. Minn.Stat. § 645.16. In addition, we can apply certain presumptions, including the presumption that the legislature does not intend an absurd result. Minn.Stat. § 645.17 (2000).

Respondent contends that subdivision 7(c) is unambiguous as to the mandatory nature of the hearing time frames when an ex parte order for protection has issued. He argues that because appellant requested a hearing, subdivision 7(c) clearly and unambiguously required that a hearing be held within 7 days of the ex parte order's issuance. The order was issued on December 28, 1999; therefore, respondent argues that the referee lacked jurisdiction to hold a hearing on the matter after January 4, 2000.

In contrast, appellant asserts an alternate interpretation that the time frames are directory, giving domestic abuse matters priority, but not involving subject matter jurisdiction. Appellant further asserts that the effect of failing to comply with the hearing time frames in subdivision 7(c) may be the expiration of the ex parte order for protection; however, the court would continue to have jurisdiction over the petition for at least 14 days under subdivision 5(a), which applies to petitions when no ex parte order has issued.

Contrary to respondent's argument, nothing in the statutory language requires that the district court be divested of subject matter jurisdiction. Rather, the statute is silent as to the consequences of the district court's failure to hold a hearing within the statutory time frames. Given this silence and the opposing interpretations of the statute, we conclude that the statute is ambiguous and look to other indicators of legislative intent, as well as the statutory language, to interpret the statute. *See* Minn.Stat. § 645.16.

There is no evidence in the legislative history that the legislature intended courts to lose jurisdiction upon failure to meet the hearing time frames. Instead, the legislative history demonstrates an intent to simplify the process and ease the burden on petitioners.[7] This intent is also evident in

---

Because appellant requested relief such as temporary custody and monetary support that necessitates a hearing within 7 days under subdivision 7(e), a hearing was required. We take this opportunity to stress the need for uniformity and compliance with the procedural requirements of the Act, and note the 14–day time frame set forth in Hennepin County's form is out of compliance with the current statute.

**6.** The 2000 amendments to subdivision 5 dealing with personal service are not at issue here. *See* Act of April 24, 2000, ch. 437, § 1, 2000 Minn. Laws 940, 940–41.

**7.** Transcripts of legislative committee meetings provide some insight into the intent of

the elimination of a mandatory hearing whenever an ex parte order has issued in the amended statute, which allows petitioners to obtain, in some circumstances, ex parte orders effective for a year or longer without a subsequent hearing. Minn.Stat. § 518B.01, subd. 7(c), (e).

In addition, divesting the district court of subject matter jurisdiction for failure to set a hearing within the statutory time frames would undermine the purpose of the Act. In *Baker v. Baker*, we discussed the purpose of the Act, noting the large number of assaults on domestic abuse victims by their partners and the correlating need for assistance and shelter. 494 N.W.2d 282, 285 (Minn.1992). We also recognized that the Act was enacted as one means to protect these victims. *Id.; see also Errington*, 310 N.W.2d at 682 (noting that the Act was enacted "to provide an efficient remedy for victims of abuse").

Respondent's interpretation of the Act would thwart its very purpose. If subject matter jurisdiction is divested every time a hearing on a petition for an order for protection is not held within the statutory time frames, victims of domestic abuse will be forced to begin the protection process anew. This not only has an impact on public safety, but may also penalize a petitioner when delay is caused by the court, respondent, or by other events beyond the petitioner's control. Here, appellant performed the steps required of her by the statute in filing a petition and affidavit. The district court set the hearing date for January 6—a date already beyond the 7-day time frame for a hearing requested by a petitioner. The record indicates that it was primarily a result of the court's calendar that a full hearing was continued until January 7. Then on January 7, another continuance was granted as a result of respondent's counsel's illness—another factor not within appellant's control. Clearly, divesting the district court of subject matter jurisdiction under such circumstances interferes with the purpose of the Act and is not a consequence dictated by the Act's language.[8] Thus, we hold that neither the statutory language nor the other indicia of legislative intent dictate that the court loses jurisdiction over appellant's petition when a hearing is not held within

the legislature in enacting the 1995 amendments to the Act. Testimony at a hearing of the Civil Law Subcommittee of the House Judiciary Committee indicates that one purpose of the house bill was to reduce the number of domestic abuse hearings. Hearing on H.F. 927, H. Jud. Comm./Civ. Law Subcomm., 79th Minn. Leg., Mar. 24, 1995, (audio tape) (comments of Rep. Bishop, House chief author of the bill). The bill's chief author testified that at least one judge had expressed the concern that in about half of all scheduled domestic abuse hearings the respondent fails to appear or does not contest the ex parte order for protection. *Id.* Similarly, the companion senate bill was presented to the Family Law Subcommittee of the Senate Judiciary Committee by its chief author as an effort to ease the strain on court dockets and to alleviate the burden on petitioners by scheduling hearings only at the request of a party. Hearing on S.F. 864, S. Jud. Comm./

Fam. Law Subcomm., 79th Minn. Leg., Mar. 31, 1995 (audio tape) (comments of Sen. Kiscaden, Senate chief author of the bill).

**8.** In addition, we are not persuaded by the court of appeals' reliance on *El Nashaar v. El Nashaar*, 529 N.W.2d 13, 14 (Minn.App. 1995), to reach its conclusion in this case that the time frames are jurisdictional. In *El Nashaar*, the court of appeals rejected the district court's attempt to continue an ex parte order for protection beyond the 14–day requirement in effect at that time, concluding that the district court "lacked authority to continue the * * * ex parte order in effect for more than 14 days without a full hearing and appropriate findings on domestic abuse." *Id.* Even if we were bound by *El Nashaar*, the continuation of an ex parte order beyond the statutory time frame is a different issue than the subject matter jurisdiction question here.

the time frames of Minn.Stat. § 518B.01, subd. 7(c).

■ Nonetheless, although the district court did not lose subject matter jurisdiction, our holding does not diminish ·the importance of conducting timely hearings after issuance of an ex parte order for protection. The statute requires courts to give domestic abuse matters priority in scheduling. Moreover, the statutory time frames for conducting hearings after an ex parte order for protection has issued provide procedural protections to ensure that the due process rights of respondents— who may be excluded from the family home and in other ways restrained without the right to initially contest the order—are protected. *Baker*, 494 N.W.2d at 287, 288 (concluding that the Act provides extensive procedural safeguards for respondents in that ex parte orders must be based on an application and sworn affidavit, are issued only by a judge or referee, and are issued for a short time period). While the statute no longer expressly provides that ex parte orders for protection are effective for only 14 days, as was the case when *Baker* was decided, the rights of respondents must still be protected. We conclude that the statute protects these interests by simply allowing the ex parte order to expire if a hearing is not held within the statutory time period.[9] However, despite the order's expiration, the court retains jurisdiction over the original petition for protection. The petition is then essentially treated as a petition for an order for protection where no ex parte order has ever

been issued and is subject to the requirement that a hearing be held within 14 days. *See* Minn.Stat. § 518B.01, subd. 5(a).

Here, a full hearing on appellant's petition was scheduled first for January 6, then January 7, both well within the 14–day deadline in subdivision 5(a). Because respondent's counsel was ill, the hearing could not be held on January 7 and was rescheduled for January 21. On these facts it appears the court attempted to give the petition in this case the docket priority the legislature intended. In any event, although a full hearing on appellant's petition was not held within 14 days after the issuance of the ex parte order, we conclude, as we did in our analysis of subdivision 7(c), that failure to hold a hearing within the 14–day time period in subdivision 5(a) does not divest the court of jurisdiction over the petition.

This conclusion comports with that of the Tennessee Supreme Court in *Kite v. Kite*, 22 S.W.3d 803 (Tenn.1997). Faced with a similar issue, the court held that the statutory 10 day hearing requirement at issue was a limitation on the duration of the ex parte order and not a jurisdictional limitation. *Id.* at 806. In so holding, the Tennessee Supreme Court concluded: (1) that the intended operation of the statute is ambiguous because it mandates a hearing within 10 days but does not define the consequences for failure to meet that requirement; (2) that the legislature could

9. Here, the ex parte order was issued on December 28, 1999, and, because of the relief requested by appellant, the statute required a hearing to be set within 7 days, by January 4, 2000. *See* Minn.Stat. § 518B.01, subd. 7(c), (e). The order, however, set the hearing for January 6, 2000, and stated that "THIS EX PARTE ORDER IS EFFECTIVE UNTIL THE HEARING SCHEDULED ABOVE * * *." Thus, in this case not only was the initial hearing date outside the statutory time frame, the order also expired on its face. Presented with these facts we do not decide the validity of ex parte orders for protection in situations where a hearing is set within the statutory hearing time frame but the order is then continued beyond the time frame for reasons not present in the instant case such as continuance at respondent's request or due to respondent's dilatory action.

not have intended the absurd result that protection might be denied through no fault of the petitioner's; (3) that it would be illogical for the legislature, having stated its intent to provide enhanced protection to domestic abuse victims, to create a jurisdictional bar to apply only to those petitioners demonstrating imminent danger; (4) that interpreting the prompt hearing requirement as a limit on the duration of ex parte protective orders protects respondents from ongoing frivolous or retaliatory orders; and (5) that the legislature could have drafted a complete procedural bar into the statute, had it intended such a result. *Id.* at 805–06.

We concur with this reasoning. Like the statute at issue in *Kite,* Minnesota's Act does not define the consequences for the failure to meet the hearing time frames. Because the legislature could have drafted a jurisdictional bar into the statute but failed to do so, we decline to read such a consequence into the statute. Furthermore, treating the time frames for conducting a hearing on ex parte orders for protection as jurisdictional would undermine the purpose of the Act—to provide speedy, effective relief to victims of domestic abuse. As recognized in *Kite,* such divestiture would be an absurd result, especially when a hearing is delayed due to causes other than the petitioner's own actions.

■  The statutory time frames operate effectively as limits on the duration of ex parte orders for protection and mandate that domestic abuse cases be given docket priority. Therefore, we hold that although the ex parte order expired upon the court's failure to comply with the statutory hearing time frames, the court did not lose subject matter jurisdiction over the original petition as amended and had the authority to conduct a hearing and issue an order for protection on January 21, 2000.

Reversed.

GILBERT, Justice (dissenting).

I agree with the majority's statement on public policy in regard to the importance of petitions for an order for protection in cases of domestic abuse. However, we should not use public policy reasoning to alter a purely statutory equitable remedy. I therefore dissent because the district court's failure to hold the hearing within the 14–day time frame as required by Minn.Stat. § 518B.01, subd. 5(a) (2000) caused the petition to expire, and the court did not have jurisdiction to hold a hearing in the absence of a petition.

Under this provision of the Domestic Abuse Act, the district court is required to order a hearing no later than 14 days after receipt of a petition for an order for protection, or, if an ex parte order has been issued under subdivision 7, those time periods apply. Minn.Stat. § 518B.01, subd. 5(a). The ex parte order in this case was issued on December 28, 1999. Because the petitioner requested relief requiring a hearing, January 4, 2000 was the court's deadline. However, a hearing was not held until January 21, 2000. In the interim, the ex parte order expired of its own right on January 6, 2000, and the record is absent of any request for an extension of that order. Because the court did not adhere to the requirements of the Act, the petitioner was left unprotected—perhaps unbeknownst to her even from the time her ex parte order expired on January 4, pursuant to the statutory 7–day time frame, until the time of her hearing on January 21. This is contrary to the Act's purpose of providing relief to victims of domestic abuse, and it also highlights flaws in the Act and in the majority's analysis.

Implicit in the majority's analysis is an alteration of Minn.Stat. § 518B.01, subd. 5, originating from appellant's "alternate interpretation that the time frames are directory," and based on opposing constructions of this statute by petitioner and respondent. However, mere opposing constructions should not lead us to conclude a statute is ambiguous when it is not. The statute requires that "the court shall order a hearing which shall be held not later than 14 days * * *." The majority opinion substitutes the word "may" for "shall" and, as altered by the court, the statute would now read in effect: "the court shall order a hearing which [may] be held not later than 14 days * * *." The majority's construction is contrary to the rules of statutory interpretation, which provide that when interpreting statutory language, "shall" is mandatory, not permissive. Minn.Stat. § 645.44, subd. 16 (2000). But the majority has determined that this precise language is ambiguous and that construing "shall" as mandatory rather than permissive achieves an absurd result. To support its position, the majority opines that strict adherence to the 14–day time limit would not satisfy the legislature's "intent to simplify the process and provide greater protection to petitioners." However, under the majority's holding, a petitioner loses interim protection if the court holds the full hearing after an ex parte order has expired. It is this gap in protection and a delay in conducting a hearing that is contrary to the purpose of the Act.

Instead of creating a theory of continuing jurisdiction when the order itself did not provide for that and the petitioner did not ask for the extension, I would affirm the court of appeals and hold that when the district court fails to order a hearing held within the required time frame, the petition expires and the court does not have jurisdiction unless the petitioner asks the court to extend the timeframe or files another petition. Although this result places a burden on the petitioner to either ask for an extension or file a new petition when a previous one expires, the burden is slight and when compared to the alternative, which could result in a gap in protection. Requiring the petitioner to request an extension of the time deadlines or file a new petition resolves the potential gap problem and is consistent with the purpose and the clear and unambiguous language of the Act.

The courts are directed to give these hearings priority, but under the majority's holding there is no real incentive for the court or parties to do so—other than the potential loss of protection if a hearing is not held before an order expires. Petitions for orders for protection have become a significant part of our judicial system. In fact, during the year 2000 alone, over 13,000 petitions were filed [1] in Minnesota. The high volume of this time-consuming procedure created by the legislature obviously has a major impact on the judicial system because we only have 268 district court judges in the State of Minnesota. Although the legislature did not appropriate new funds to handle this huge new case influx, it did limit the terms of existence of these petitions, which this majority opinion now nullifies. Because of the high volume and the importance of a timely hearing, the district court, as well as the lawyers who agree to take these cases, must give these hearings priority on their calendars.

Contrary to what the majority states, the initial hearing date of January 6 was not delayed "primarily [as] a result of the court's calendar," but initially and solely

1.  http://www.crimnet.state.mn.us/courts-  tats.htm.

because the referee accommodated a scheduling conflict of petitioner's lawyer. The full calendar preventing a hearing on January 6 developed later, after the petitioner's lawyer returned from attending to another matter,[2] which matter was not of the same character and did not have priority over this hearing.[3] Furthermore, the designated hearing date was missed without any effort by petitioner's lawyer to request an extension of this order by the court. When a lawyer signs on to a case such as this, he should recognize that these matters have priority on the court's calendar and on the lawyer's calendar. These orders for protection are in the nature of an ex parte temporary restraining order, which are entitled to priority on the calendar pursuant to Rule 65.01.

Traditionally, a temporary restraining order has been treated as a common law equitable remedy available when there was an underlying civil case pending. *See, e.g., Cherne Indus., Inc. v. Grounds & Assocs., Inc.,* 278 N.W.2d 81, 91–92 (Minn.1979). A civil action is commenced by filing and serving a summons and complaint and equitable relief could be part of the case. Minn. R. Civ. P. 3.01, 7.02 and 65.01–.04. The court thus had jurisdiction irrespective of the status of the temporary equitable relief. *See* Minn. R. Civ. P. 65.02(c). Contrary to that traditional setting, in this case, there is no underlying civil action and the statutorily created order for protection is the sole basis for the court's jurisdiction. It is purely a statutory remedy created by the legislature with statutorily defined purposes, procedures, and time limits.[4]

The courts are evidently finding the time to routinely grant these ex parte orders. However, when they do so, they must be mindful of the statutory time frames and the requirement of setting aside all other matters "except older matters of the same character" on their calendars and on the lawyers' calendars if necessary to ensure that there is a hearing within the required time frame. Then these orders would not expire by their own terms, but they could be properly extended by the court after a full hearing.

Granting of an order such as this has significant immediate collateral consequences in marital dissolution matters and in state and federal criminal cases.[5] The legislature must have been mindful of this when they set short time deadlines within the statute for the continuation of these orders until a full hearing. However, in this case the majority acknowledges that the ex parte order expired, thus upholding the mandatory 7–day hearing requirement contained in Minn.Stat. § 518B.01, subd. 7(c) (2000). But, then, based solely on public policy rationale, the majority opinion voids the 14–day statutory time frame

2. Respondent's counsel then became ill on January 7 and the court granted another continuance, but there is nothing in the record to indicate why a hearing could not be held within the statutorily required 14 days.

3. Minnesota Rules of Civil Procedure 65.01 provides in part that "the motion for a temporary injunction shall be set down for hearing at the earliest practicable time and shall take precedence over all matters except older matters of the same character * * *." Similarly, Minn.Stat. § 518B.01, subd. 3 (2000) provides that "[a]ctions under this section shall be given docket priorities by the court."

4. Minnesota Statutes § 518B.01, subd. 4 states: "There shall exist an action known as a petition for an order for protection in cases of domestic abuse."

5. *E.g.,* Violence Against Women Act of 1994, 18 U.S.C. §§ 2262, 2265 (1994 & Supp.1999); Violent Crime Control and Law Enforcement Act of 1994, 18 U.S.C. § 922(G)(8) (1994 & Supp.1999); Marital Dissolution Act, Minn. Stat. § 518.131 (1998).

contained in Minn.Stat. § 518B.01, subd. 5. There is simply no continuing jurisdiction because no underlying cause of action has been served or filed and, pursuant to statute, the order lapsed and the ordered hearing date was passed over without being extended. The full hearing date was held beyond the statutorily mandated 14 days. We should not unilaterally void strict statutory time frames when the petitioner has not availed herself of procedures that would have allowed for an extension of this order and provided the corresponding continuing jurisdiction.