STATE OF MINNESOTA

IN SUPREME COURT

A13-2289

Court of Appeals                                                    Anderson, J.

Carmen Schroeder,

           Respondent,

vs.                                                     Filed:  June 17, 2015
                                               Office of Appellate Courts
Western National Mutual Insurance Co.,

           Appellant.

_____

William J. Schmitz, Schmitz Law Offices, Woodbury, Minnesota, for respondent.

Katherine A. McBride, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota, for appellant.

Michael M. Skram, Dale O. Thornsjo, Lance D. Meyer, O'Meara, Leer, Wagner & Kohl, P.A., Minneapolis, Minnesota, for amici curiae The Insurance Federation of Minnesota, and The Property Casualty Insurers Association of America.

_____

S Y L L A B U S

The Minnesota No-Fault Automobile Insurance Act, Minn. Stat. § 65B.44, subd. 5 (2014), allows an injured person who provides care and maintenance of a home as a full-time responsibility to recover the reasonable value of care and maintenance services, regardless of whether the services were actually replaced.

Affirmed.

1

O P I N I O N

ANDERSON, Justice.

The question presented by this case is whether a person injured in an automobile accident may recover the reasonable value of household services under Minn. Stat. § 65B.44, subd. 5 (2014), if those services were not replaced or performed during the period of disability. We conclude that an injured person who has primary responsibility for care and maintenance of the household need not replace household services as a condition to recovering the reasonable value of such services. We therefore affirm.

Respondent Carmen Schroeder suffered a significant spinal injury in a motor vehicle accident on May 10, 2012. She was totally disabled until October 3, 2012. During her period of disability, Schroeder owned and maintained her own home but was unable to perform most household duties, such as vacuuming, laundry, and yard work. Schroeder had no close family living nearby to help with household duties, she did not purchase replacement home care services, and nobody volunteered to perform the services for her.

On July 17, 2012, Schroeder filed a claim for $3,400 in replacement service loss benefits with her no-fault insurance provider, appellant Western National Mutual Insurance Co.[1] She stated that, because she was primarily responsible for household care and maintenance and was unable to perform household duties until her disability ended,

[1]     Schroeder claimed the statutory-maximum benefit of $200 per week from May 19 to September 7, 2012. Thereafter, she was medically cleared to perform some household tasks, and she claimed $100 per week from September 8 to October 3, 2012.

she was entitled to the "reasonable value" of the home care and maintenance services she was unable to perform. *See* Minn. Stat. § 65B.44, subd. 5. Western National refused to pay Schroeder's claim. Although Western National conceded that Schroeder need not pay for replacement services to receive benefits, Western National would not reimburse Schroeder for household services that were not replaced in some way.

The parties proceeded to arbitration, and the arbitrator awarded Schroeder's entire claim of $3,400, plus interest and costs. The district court denied Western National's motion to vacate the arbitration award, concluding that although Minn. Stat. § 65B.44, subd. 5, is unclear as to whether household services must be replaced when expenses are not incurred, replacement of services is not required under *Rindahl v. National Farmers Union Insurance Cos.*, 373 N.W.2d 294 (Minn. 1985). The court of appeals affirmed, concluding that Minn. Stat. § 65B.44, subd. 5, does not require replacement of household services when the injured person is primarily responsible for household duties. *Schroeder v. W. Nat'l Mut. Ins. Co.*, 850 N.W.2d 712, 717 (Minn. App. 2014).

I.

Interpretation of a statute is subject to de novo review. *W. Bend Mut. Ins. Co. v. Allstate Ins. Co.*, 776 N.W.2d 693, 698 (Minn. 2009) (citing *Auto–Owners Ins. Co. v. Forstrom*, 684 N.W.2d 494, 497 (Minn. 2004)). Although arbitrators are generally the "final judges of both law and fact," we have held that "in the area of automobile reparation, arbitrators are limited to deciding issues of fact, leaving the interpretation of the law to the courts." *Johnson v. Am. Family Mut. Ins. Co.*, 426 N.W.2d 419, 421 (Minn. 1988).

3

The Minnesota No-Fault Automobile Insurance Act ("No-Fault Act"), Minn. Stat. §§ 65B.41-.71 (2014), sets forth the requirements for no-fault automobile insurance and mandates benefits for "[b]asic economic loss." Minn. Stat. § 65B.44, subd. 1(a). "Loss" is defined as "economic detriment resulting from the accident causing the injury" and is limited to six statutorily defined categories. Minn. Stat. § 65B.43, subd. 7. "Loss" does not include "noneconomic detriment," which is defined as "dignitary losses suffered" as a result of the accident and may include "pain and suffering, loss of consortium, and inconvenience." *Id.*, subds. 7-8.

One category of economic, compensable loss is "replacement services loss," which compensates an injured person as provided in Minn. Stat. § 65B.44, subd. 5:

> Replacement service loss benefits shall reimburse all expenses reasonably incurred by or on behalf of the nonfatally injured person in obtaining usual and necessary substitute services in lieu of those that, had the injured person not been injured, the injured person would have performed not for income but for direct personal benefit or for the benefit of the injured person's household; if the nonfatally injured person normally, as a full time responsibility, provides care and maintenance of a home with or without children, the benefit to be provided under this subdivision shall be the reasonable value of such care and maintenance or the reasonable expenses incurred in obtaining usual and necessary substitute care and maintenance of the home, whichever is greater.

We have interpreted section 65B.44, subdivision 5, as creating two mutually exclusive paths to compensation. *See Rindahl*, 373 N.W.2d at 296-97. The first clause "requires an actual expenditure or liability for services rendered," *Nadeau v. Austin Mut. Ins. Co.*, 350 N.W.2d 368, 373 (Minn. 1984), and is inapplicable here because Schroeder did not pay for replacement household services. An injured person who is primarily responsible for household services, however, "is not required to incur actual expense for replacement

4

help but can recover the reasonable value of her or his own household services" under the second clause. *Rindahl*, 373 N.W.2d at 296.

A.

Western National first argues that Schroeder cannot recover replacement service loss benefits because she did not suffer an economic loss. Western National interprets the No-Fault Act as establishing two thresholds for recovery of replacement service loss benefits. First, the injured person must demonstrate "loss," which is defined under Minn. Stat. § 65B.43, subd. 7, as "economic detriment." *See* Minn. Stat. § 65B.44, subd. 1(a) (providing that "[b]asic economic loss benefits" are available only when the injured person has suffered loss). Second, once "loss" is established, the injured person may recover only by satisfying the requirements of one of the six enumerated categories of loss. *See* Minn. Stat. § 65B.43, subd. 7 (providing that "loss" consists only of the six enumerated categories); Minn. Stat. § 65B.44, subds. 2-7 (providing requirements for each category of loss). Thus, Western National contends that because Schroeder suffered noneconomic detriment, she did not suffer a loss regardless of whether she satisfies the requirements of the replacement-services-loss statute, Minn. Stat. § 65B.44, subd. 5.

Western National's interpretation of the No-Fault Act contradicts the Act's plain meaning. Nowhere does the Act state that an injured person must independently prove economic detriment. Rather, Minn. Stat. § 65B.43, subd. 7, establishes that "loss" and "economic detriment" are equivalent terms "consisting only of" the six enumerated categories of loss, including "replacement services loss." Thus, if an injured person suffers a loss—in other words, if he or she satisfies the requirements of one of the six

5

statutory categories—that person has suffered economic detriment as well. Because we conclude that Schroeder suffered replacement services loss, she necessarily suffered an economic loss under the statute.

Moreover, our holding in *Rindahl* is controlling here and demonstrates that recovery of replacement service loss benefits is not contingent on an independent showing of economic detriment. Mary Lou Rindahl was injured in a motor vehicle accident and was unable to perform home care and maintenance. *Rindahl*, 373 N.W.2d at 295. The Rindahls did not hire anybody to perform these services; instead, "other members of the family . . . t[ook] up the slack." *Id.* at 296. We concluded that Rindahl was entitled to replacement service loss benefits under the second clause of Minn. Stat. § 65B.44, subd. 5, because she was "primarily responsible for all housework [and] child care." *Id.* at 297 (alteration in original). We did not consider whether Rindahl suffered economic detriment. *See id.* at 296-97.

Western National argues that *Rindahl* is factually distinguishable because Rindahl's family provided replacement services, whereas Schroeder neither solicited nor received replacement services. It asserts that economic detriment occurred only when Rindahl's family members volunteered their services. We disagree. Rindahl was entitled to replacement service loss benefits because she was the "family member . . . who does most of the work in the home." *Rindahl*, 373 N.W.2d at 297. The same designation applies to Schroeder, who lived alone during her period of disability. Nowhere in *Rindahl* did we state or even imply that our decision was dependent on replacement of services. Our observation that family members "t[ook] up the slack," *Rindahl*, 373

6

N.W.2d at 296, did not contribute to our holding, and there is no indication that we would have held differently if the household services had not been replaced.

To summarize, injured persons may recover under the No-Fault Act for "all loss suffered." Minn. Stat. § 65B.44, subd. 1(a). "Loss" is defined as "economic detriment . . . consisting only of" six categories, one of which is replacement services loss. Minn. Stat. § 65B.43, subd. 7. An injured person who satisfies the requirements of one of the six categories has suffered both loss and economic detriment; no other showing is necessary. Thus, Schroeder merely needed to demonstrate that she suffered replacement services loss under Minn. Stat. § 65B.44, subd. 5.

B.

Next, Western National argues that Schroeder does not satisfy the requirements of Minn. Stat. § 65B.44, subd. 5, because the plain meaning of "replacement service loss benefits" requires that the services actually be replaced. Western National notes that "replace" means "restore to a former place or position," or "take the place of esp[ecially] as a substitute or successor." It contends that the word "replacement" creates an "obvious pre-condition" that services must be replaced before they are compensable.

A plain-text reading of Minn. Stat. § 65B.44, subd. 5, however, clearly demonstrates that recovery is not contingent on replacing household services, if the injured person is primarily responsible for household maintenance. *See* Minn. Stat. § 65B.43, subd. 1 (stating that phrases in the No-Fault Act shall "have the meanings ascribed to them, except where the context clearly indicates a different meaning"). "Replacement service loss benefits" is a defined phrase with two independent meanings.

7

The second clause, unlike the first clause, does not contain the words "[r]eplacement service" or "substitute services." The use of a semicolon also suggests that Minn. Stat. § 65B.44, subd. 5, contains two clauses that are related in topic but nevertheless independent of one another. *See* William Strunk, Jr. & E.B. White, *The Elements of Style* 5-6 (4th ed. 2000). There is no indication that the words "replacement" and "substitute" in the first clause of subdivision 5 apply to the second clause as well. We therefore reject Western National's proposed reading of the statute.

Applying Minn. Stat. § 65B.44, subd. 5, to the facts of this case, Schroeder is eligible to receive replacement service loss benefits. Schroeder lived alone at the time of the injury, so she had "primary responsibility for management of the household." *Rindahl*, 373 N.W.2d at 297. She may therefore recover "the reasonable value of [household] care and maintenance," Minn. Stat. § 65B.44, subd. 5, regardless of whether she replaced her household services.

## II.

Finally, Western National and its *amici* urge us to consider several policy concerns.[2] However, "[w]hen the language of a statute is plain and unambiguous, it is

---

[2] Western National expresses concern that an insurer should not bear responsibility for paying benefits to an injured person who neither performed nor purchased household services. But, regardless of the validity of Western National's argument, the Legislature, in enacting Minn. Stat. § 65B.44, subd. 5, elected to recognize and compensate the work performed by the family member who is primarily responsible for household services. "[I]f the [No-Fault Act] needs revision in order to make it embody a more sound public policy, the Legislature, not the judiciary, must be the reviser." *Axelberg v. Comm'r of Pub. Safety*, 848 N.W.2d 206, 213 (Minn. 2014).

8

assumed to manifest legislative intent and must be given effect." *Burkstrand v. Burkstrand*, 632 N.W.2d 206, 210 (Minn. 2001).  We therefore decline to consider these policy arguments.

Affirmed.