*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1229**

Reagan West,
Appellant,

vs.

West Bend Mutual Insurance Company,
Respondent.

**Filed June 3, 2024**
**Reversed and remanded**
**Cochran, Judge**

Dakota County District Court
File No. 19HA-CV-23-594

W. Paul Otten, Otten Law Offices, Burnsville, Minnesota (for appellant)

Jeannie Provo-Petersen, Provo-Petersen & Associates, P.A., Rosemount, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Cochran, Judge; and Kirk, Judge.[*]

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

In this no-fault insurance appeal, appellant-insured challenges the district court's denial of her motion to vacate an arbitration award. Appellant argues that the district court

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

erred by denying her motion to vacate because the arbitrator misapplied the Minnesota No-Fault Insurance Act (the no-fault act), Minnesota Statutes sections 65B.41-.71 (2022) and the Minnesota Rules of No-Fault Insurance Arbitration Procedure (the no-fault rules). Because the arbitrator erred in his application of the law, we reverse and remand the district court's denial of appellant's motion to vacate.

**FACTS**

In October 2020, appellant Reagan West collided with a guard rail on Interstate 35 during an ice storm. Upon striking the guard rail, West's car "spun out, hit another vehicle, and circled into the ditch." This appeal concerns respondent West Bend Mutual Insurance Company's denial of West's claims for certain benefits under her no-fault insurance policy and the ensuing no-fault arbitration.

*Events Following the Collision*

Approximately one month after the crash, West applied for no-fault-insurance benefits from West Bend. In her application, West claimed that she was experiencing neck pain, numbness in her left arm, and headaches because of the accident. West underwent chiropractic treatment during the ensuing months, and West Bend made payments to West's chiropractor for treatment received from October 2020 to January 2022. During that time, West Bend sporadically contacted West for updates on her progress. In January 2021, three months after the car accident, West informed West Bend that she was experiencing "a great deal of trouble on [her] left side." Approximately one year after her car accident, West reported to West Bend that she was "still having a great deal of pain and weakness" in her shoulder and back. West also wrote that she had asked her chiropractor

2

"to evaluate and send [West Bend] an update." According to West Bend, it never received an update from the chiropractor. Therefore, in April 2022, West Bend obtained an independent medical examination of West's condition.

The independent chiropractic evaluator opined that West's injuries from the car accident had resolved and "no further chiropractic treatment, physical therapy, massage therapy or acupuncture [was] reasonable or necessary for [her injuries]." The evaluator added that West was already working "full-time without restrictions," and could continue to do so. In addition, the evaluator noted that West was "fully capable of performing her activities of daily living, including household duties and essential services, without limitation." As a result of the evaluation, West Bend informed West that it would discontinue "all No-Fault benefits otherwise payable for this loss" effective February 9, 2022.

*West Petitions for Arbitration*

On July 7, 2022, West petitioned for no-fault arbitration, asserting that West Bend was obligated to reimburse her $2,458 for chiropractic care received after West Bend discontinued benefits and $7,457.14 for the cost of replacing the household services West alleged that she could not perform due to her injuries (replacement services). West's total claim was for $10,000.[1] West attached a billing statement from the chiropractor that included unpaid bills through June 2022, totaling $2,458. And, to support her claim for replacement services, West included a week-by-week itemization of the services that she

_____

[1] West also claimed $84.86 in mileage for trips to her chiropractor's office.

alleged she was unable to perform and "were completed by others" after she was injured in the car accident.

West filed an amended arbitration petition in August 2022. West again claimed to be owed $2,458 in medical expenses but reduced her replacement-service-loss calculation by $2,000 and added $2,000 in wage loss to her claim. The revised claim totaled $10,000. The amended petition's itemization of West's medical expenses remained the same. West also included a letter from her chiropractor dated August 5, 2022, regarding her ability to do household chores. In the letter, he wrote: "West states that she was limited to several household activities that she needed family/hired help to perform" from October 22, 2020 (the date of injury) through August 5, 2022.

*West's Arbitration Statement*

In November 2022, just before the arbitration, West submitted an arbitration statement to West Bend and the arbitrator. In the statement, West noted that she had continued to receive medical care related to her car-accident injuries since filing her arbitration petition on July 7 and provided an updated statement of her medical expenses. In addition to the $2,458 in chiropractic expenses identified in West's original petition, West's medical-expense itemization included expenses from chiropractic visits between July 13, 2022, and October 31, 2022. These amounts had not been previously disclosed to West Bend. West also included, for the first time, services from other medical providers, including an MRI and ozone injections, and a pain-clinic visit. West's itemization showed that she received these other medical services between July 8, 2022, and November 4,

4

2022. West's disputed medical expenses included in the arbitration statement totaled $11,562.92.

West's claim for replacement services also increased to $7,000. West alleged that her husband travelled "extensively for work, leaving the responsibility of the household chores to [West]" who was "the primary homemaker." West included another note from her chiropractor, dated November 8, 2022. Other than an update to the time period during which West was limited in performing household tasks, the chiropractor's second note was identical to the first note. In all, West's claim at the time of arbitration totaled $21,487.44.

*The Arbitration Award*

The arbitrator awarded West $2,481.94, plus interest. The bulk of the award consisted of $2,458 for the chiropractic expenses that West identified in her initial petition for arbitration. The arbitrator determined that those expenses were "reasonable and necessary and related to the [accident]." The arbitrator determined that the other medical expenses set forth in West's arbitration statement were outside of the jurisdictional limits of mandatory no-fault arbitration, which was only "for claims of $10,000 or less at the commencement of the arbitration." The arbitrator added that "these newly claimed bills cannot now be brought in this arbitration as they were not included at the time the original petition was filed and were therefore waived."

The arbitrator did not award West for her alleged wage loss or replacement-service loss. Regarding wage loss, the arbitrator found that West "failed to establish and prove actual loss of income." And regarding replacement services, the arbitrator found that West failed to prove that she paid anyone to provide services for her. The arbitrator noted that

5

West's itemization of the replacement services was prepared "a full 20 months after the [motor-vehicle accident] rather than commensurate with the services and demonstrate[s] no progress or diminution of need for help at home." The arbitrator concluded that "[a]ny claim here is not supported by the evidence."[2]

After the arbitrator denied West's request to modify the award, West moved the district court to vacate the award. The district court denied West's motion and confirmed the arbitrator's award. This appeal follows.

## DECISION

The no-fault act exists in part to "relieve the severe economic distress of uncompensated victims of automobile accidents." Minn. Stat. § 65B.41(1). To that end, the no-fault act requires automobile insurers to provide basic economic-loss benefits, including those for medical expenses, income loss, and replacement-service loss. Minn. Stat. § 65B.44, subds. 2, 3, 5. Disputes over no-fault benefits in the amount of $10,000 or less are subject to mandatory arbitration. Minn. Stat. § 65B.525, subd. 1; Minn. R. No-Fault Arb. 6.

West argues that the arbitrator erred by misapplying the no-fault act and no-fault rules. "[N]o-fault arbitrators are limited to deciding questions of fact, leaving the

---

[2] The arbitrator also determined that West's "failure to provide prompt notice" of her wage loss and replacement-service loss prejudiced West Bend's ability to investigate those losses, thereby further precluding recovery for those losses. West challenges this determination on appeal. As follows, we conclude that the arbitrator did not err by determining that West failed to prove replacement-service loss. And West does not dispute the arbitrator's finding that she "failed to establish and prove actual loss of income to recover income-loss benefits under the statute." Thus, we need not decide whether the arbitrator properly determined that West's lack of timely notice prejudiced West Bend.

6

interpretation of law to the courts." *Fernow v. Gould*, 835 N.W.2d 8, 11 (Minn. 2013) (quotation omitted). This limitation exists to ensure the consistent interpretation of the no-fault arbitration act. *Id.* We review the legal conclusions of a no-fault arbitrator de novo. *Id.* But the arbitrator's factual findings are final. *Karels v. State Farm Ins. Co.*, 617 N.W.2d 432, 434 (Minn. App. 2000).

West argues that the arbitrator erred as a matter of law by limiting her recovery of medical expenses in a manner contrary to the no-fault act and no-fault rules. She asserts that the arbitrator further erred by applying the incorrect legal standard to the portion of her claim dealing with replacement services. We conclude that there is merit to her first argument but not to her second argument.

## I. The arbitrator erred by concluding that certain medical expenses were barred by the no-fault act.

West contends that the arbitrator erred as a matter of law by failing to allow recovery of medical expenses incurred after the filing of her arbitration petition. We agree and conclude that the district court should have granted her motion to vacate on this basis.

Under the no-fault act, insurers must "provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle," including for medical expenses that are reasonable and necessary. *See* Minn. Stat. § 65B.44. subds. 1, 2.[3] The no-fault act also requires binding arbitration of no-fault insurance claims totaling $10,000 or less "at the commencement of arbitration." Minn. Stat. § 65B.525, subd. 1.

---

[3] No-fault benefits are "subject to any applicable deductibles, exclusions, disqualifications, and other conditions." Minn. Stat. § 65B.44, subd. 1(a).

The no-fault act directs the supreme court to adopt rules governing the mandatory-arbitration process. *Id.*

Under the no-fault rules, arbitration commences when the claimant files a petition. Minn. R. No-Fault Arb. 5(c), (e). The no-fault rules also authorize the arbitrator to award reimbursement for losses *incurred after* the commencement of arbitration notwithstanding the $10,000 jurisdictional limit at the time the petition is filed. Specifically, rule 6 provides:

> By statute, mandatory arbitration applies to all claims for no-fault benefits . . . where the total amount of the claim, at the commencement of arbitration, is in an amount of $10,000 or less. In cases where the *amount of the claim continues to accrue* after the petition is filed, *the arbitrator shall have jurisdiction* to determine all amounts claimed *including those in excess of $10,000.*

Minn. R. No-Fault Arb. 6 (emphasis added).

In this case, however, the arbitrator failed to consider any medical expenses that accrued after arbitration commenced. Instead, the arbitrator expressly declined West's request for an award of medical expenses incurred after the petition was filed, limiting the award to the expenses included in West's original petition. The arbitrator reasoned that the additional expenses "fall outside of the jurisdictional limits of the mandatory No-Fault Arbitration Rules . . . providing for mandatory arbitration for claims of $10,000 or less at the commencement of the arbitration" and "cannot now be brought in this arbitration as they were not included at the time the original petition was filed." The arbitrator's decision that he lacked jurisdiction to consider the additional, post-petition medical expenses is contrary to the plain language of rule 6, which expressly grants the arbitrator jurisdiction

8

over expenses incurred after the petition for arbitration is filed *including those in excess of $10,000.*

The arbitrator's decision is also contrary to this court's precedent interpreting rule 6. In *Karels*, we addressed the question of whether a no-fault arbitrator had jurisdiction to award medical expenses and other losses incurred after a petition for arbitration was filed. 617 N.W.2d at 434. The claimant in *Karels* petitioned for arbitration, claiming that she had $2,582.01 in covered medical expenses arising out of a car accident. *Id.* at 433. After filing her arbitration petition, Karels incurred additional medical expenses and wage loss relating to the car accident. *Id.* at 435. The day before the arbitration hearing, the claimant notified her insurer that her no-fault claim totaled $38,610.92 for medical treatments, surgery, and wage loss. *Id.* Although the claim exceeded the jurisdictional limit, the arbitrator determined that he had jurisdiction over the entire claim and awarded the claimant $38,610.92. *Id.* The district court granted the insurer's motion to vacate the award, concluding that the claimant "gained an unfair advantage by adding claims the day before the arbitration hearing." *Id.* (quotation marks omitted). We reversed, citing the language of rule 6 authorizing the arbitrator to determine additional amounts incurred after the filing of the petition "including those in excess of $10,000." *Id.* at 434. We concluded that "[t]he later-accrued claims properly fell within the arbitrator's continuing jurisdiction" even though "the only expense in existence at the time [the claimant] filed her petition was the medical expense of $2,582.01." *Id.* at 436.

The *Karels* decision is on point and instructs that, in this case, the arbitrator's refusal to consider West's post-petition medical expenses was legally erroneous. As in *Karels*,

9

these "later-accrued claims properly fell within the arbitrator's continuing jurisdiction." *Id.*; *see also* Minn. R. No-Fault Arb. 6. We therefore conclude that the arbitrator erred as a matter of law when he refused to consider West's post-petition medical expenses in determining the amount of her arbitration award.

We are not persuaded otherwise by West Bend's contention that West's filing of an amended petition essentially reset the commencement of West's arbitration and barred West from recovering any expense or loss beyond those included in her amended petition. We are unaware of any legal authority that supports this argument. Instead, we find the plain language of the no-fault act and rules dispositive. As discussed above, the no-fault act provides that disputes in the amount of $10,000 or less "*at the commencement of arbitration*" are subject to mandatory arbitration. Minn. Stat. § 65B.525, subd. 1 (emphasis added); *see also* Minn. R. No-Fault Arb. 6. And "where the amount of the claim continues to accrue after the petition is filed, the arbitrator *shall have jurisdiction* to determine *all amounts* claimed including those in excess of $10,000." Minn. R. No-Fault Arb. 6 (emphasis added). The plain language of these provisions directs that the arbitrator had jurisdiction over both the medical expenses listed in West's original petition *and* over the medical expenses West incurred after the filing of the petition, notwithstanding that the total amounts exceeded $10,000. Contrary to West Bend's assertion, nothing in the no-fault act or rules limits the amount of an award to the amount specified by the claimant in an amended petition.

In sum, the arbitrator erred by concluding that he did not have jurisdiction over West's post-petition medical expenses. We therefore reverse and remand the district

10

court's denial of West's motion to vacate the arbitration award. The arbitrator may determine whether the claimed medical expenses that accrued between the commencement of arbitration and the arbitration hearing are expenses that arose from the accident and that were reasonable and necessary. *See* Minn. Stat. § 65B.44, subds. 1-2.

## II. The arbitrator did not err by determining that West failed to prove replacement-service loss.

West next argues that the arbitrator applied the wrong legal standard to the portion of her claim for replacement-service loss. We disagree.

The no-fault act permits an injured insured to recover replacement-service-loss benefits for the costs of "obtaining usual and necessary substitute services in lieu of those that, had the injured person not been injured, the injured person would have performed not for income but for direct personal benefit or for the benefit of the injured person's household." Minn. Stat. § 65B.44, subd. 5. Replacement-service-loss benefits are limited to a maximum of $200 per week. *Id.*

The supreme court has "interpreted section 65B.44, subdivision 5, as creating two mutually exclusive paths to compensation" for replacement-service-loss benefits. *Schroeder v. W. Nat'l Mut. Ins. Co.*, 865 N.W.2d 66, 68 (Minn. 2015). Under the first path, a claimant may demonstrate "actual expenditure or liability for services rendered." *Id.* (quotation omitted). Under the second path, "[a]n injured person who is primarily responsible for household services . . . is not required to incur actual expense for replacement help but can recover the reasonable value of her or his own household services." *Id.* (quotation omitted). Recovery under this path "is not contingent on an

11

independent showing of economic detriment," but instead a claimant "merely need[s] to demonstrate that she suffered replacement services loss." *Id.*

The first path is not at issue on appeal, as West does not dispute the arbitrator's finding that she failed to furnish the requisite proof of "actual expenditure or liability for services rendered." *Id.* (quotation omitted). Instead, West argues that the arbitrator failed to apply the second path's "primary homemaker" standard, which requires no proof of economic detriment.

Although West need not demonstrate economic detriment under the primary-homemaker standard, *Schroder* establishes that she must nonetheless "demonstrate that she suffered replacement services loss." *Id.* at 69. The arbitrator implicitly determined that West did not meet this standard. While not directly addressing West's primary-homemaker argument, the arbitrator did find that West's itemization of her replacement services was prepared "a full 20 months after the [motor-vehicle accident] rather than commensurate with the services and demonstrate[s] no progress or diminution of need for help at home." Based on these findings, the arbitrator concluded that "[a]*ny claim* here is not supported by the evidence." (Emphasis added.) We are satisfied that the arbitrator sufficiently considered West's primary-homemaker claim and properly determined that West did not "demonstrate that she suffered replacement service loss." *See id.*

West's reliance on *Rindahl v. National Farmers Union Insurance Cos.*, 373 N.W.2d 294 (Minn. 1985) to argue otherwise is unavailing. In *Rindahl*, the supreme court affirmed an arbitration award based on the reasonable value of a claimant's household services. 373 N.W.2d at 297. The parties stipulated that the claimant's injuries prevented her from

12

performing all household services for 44 weeks. *Id.* at 296. In affirming the award, the supreme court relied on detailed factual findings by the district court, including that the claimant

> would get up each workday, make breakfast for the family, get the children ready for school, and do the dishes. When she returned at night, she made supper, did the dishes for the day, and attended to the children's needs and other household chores. She did all the cooking and baking except for the noon sandwiches, which her husband prepared for himself and two of the five children on her workdays during the winter months. She did the housecleaning, vacuuming, windows, and washed the family clothes. She did most of the lawn and garden work, plus grocery shopping, planning of meals, and organizing the children for their various activities.

*Id.* at 297.

Relying on *Rindahl*, West appears to argue that she met her burden under the primary-homemaker standard. But unlike in *Rindahl*, there is no stipulation here that West was unable to perform household tasks. And there is little evidence regarding West's typical, pre-injury household tasks or whether she was unable to perform those tasks after her injury. In her arbitration statement, West merely asserted that her husband traveled for work and that she was therefore the primary homemaker. Further, the only record evidence of West's inability to perform household services consists of her itemization of replacement services and letters from her chiropractor dated August and November 2022. The arbitrator implicitly found West's itemization not credible, emphasizing that the itemization was generated "a full 20 months after the [motor-vehicle accident] rather than commensurate with the services." An arbitrator has the authority to "determine what constitutes reasonable proof" of a claim under the no-fault act. *See Liberty Mut. Ins.*

13

*Co. v. Sankey*, 605 N.W.2d 411, 413 (Minn. App. 2000) (quotation omitted), *rev. denied* (Minn. Apr. 18, 2000); *see also* Minn. R. No-Fault Arb. 24 ("The arbitrator shall be the judge of the relevancy and materiality of any evidence offered."). And her chiropractor's letters provide no independent evidence that West was unable to perform any specific tasks, but rather simply recount her claim that she was unable to perform "several household activities." Therefore, the arbitrator did not err by denying an award for replacement-service-loss benefits, and the district court need not instruct the arbitrator to reconsider West's replacement-service loss on remand.

**Reversed and remanded.**