MBNA AMERICA BANK, N.A.,
& Affiliates, Relator,

v.

COMMISSIONER OF REVENUE,
Respondent.

No. A04–1826.

Supreme Court of Minnesota.

April 7, 2005.

Jerome A. Geis, Briggs and Morgan, P.A., St. Paul, MN, Arthur R. Rosen, Margaret C. Wilson, McDermott Will & Emery, L.L.P., New York City, for Appellant.

Mike Hatch, Atty. Gen., James W. Neher, Bradford S. Delapena, Asst. Attys. Gen., St. Paul, MN, for Respondent.

## O P I N I O N

ANDERSON, G. BARRY, J.

Relator MBNA America Bank, N.A. and Affiliates ("MBNA") appeals from the Minnesota Tax Court's dismissal of its action seeking a refund of Minnesota corporate franchise tax for 1991 and 1992. MBNA, although it has no physical presence in Minnesota, does substantial business within the state. For the two tax years in dispute, the year ending December 31, 1991, and the year ending December 31, 1992, MBNA's net income apportioned to Minnesota was $2,076,600 and $2,146,269, respectively.

In 1995, because MBNA had not filed any Minnesota corporate franchise tax returns nor paid any tax, the Commissioner of Revenue (the "Commissioner") requested information from MBNA regarding its business in the state. MBNA responded to this request on June 30, 1995. Approximately one year later, MBNA and the Commissioner entered into an agreement (the "1996 Agreement") whereby the Commissioner requested and MBNA agreed to timely provide all records and documents necessary to calculate MBNA's alleged Minnesota corporate franchise tax liability. The 1996 Agreement expressly states MBNA's position that it was not subject to the Commissioner's jurisdiction, and that MBNA was not required to file Minnesota corporate franchise tax returns nor pay the tax. On September 24, 2001, the Commissioner issued a "Notice of Change in Your Tax" (the "Assessment") assessing corporate franchise tax for the years 1991 to 1996. MBNA paid the amounts set forth in the Assessment, including penalties and interest, on November 21, 2001.

In October, 2002, MBNA filed refund claims for the tax years 1991 and 1992 for amounts, including penalties and interest, of $395,004 and $388,570, respectively. MBNA argued that, because it is a national bank with its principal place of business in Delaware, and because it is without any physical presence in Minnesota, MBNA does not have a taxable nexus in Minnesota, and imposition of the corporate franchise tax violates the Due Process and Commerce Clauses of the United States Constitution under *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). The Commissioner denied the claims for refund on November 12, 2002, without mentioning the issue asserted before us today—that the claim was filed after the expiration of the period for filing refund claims. MBNA then filed an administrative appeal of the Commissioner's denial, which the Department of Revenue rejected on April 7, 2003.

Having exhausted administrative appeals, MBNA filed a notice of appeal, dated June 4, 2003, with the Tax Court. The Commissioner initially admitted that the Tax Court had jurisdiction to hear the appeal, but subsequently filed a motion to dismiss for lack of subject matter jurisdic-

tion on February 19, 2004. The Commissioner argued that the October 2002 refund claims were filed three weeks after the expiration of the period allowed for refund claims under Minn.Stat. § 289A.40, subd. 1 (2004), taking the position that the filing period expired one year from the date of the Assessment (one year from September 24, 2001). The Tax Court granted the motion to dismiss for lack of subject matter jurisdiction. MBNA now appeals from that decision. In this appeal, MBNA argues (1) that the one-year filing period is not triggered by the issuance of the Assessment, but rather by the payment of the tax assessed, and (2) that the Assessment violated the Taxpayers' Bill of Rights by failing to set forth the refund claim limitation period and the methods for obtaining a refund, and therefore could not have triggered the claims filing period.

## I

■■■■■ The facts in this case are undisputed. The central issues in this case are purely matters of statutory interpretation. We review de novo the tax court's interpretation of statutes. *Chapman v. Comm'r of Revenue*, 651 N.W.2d 825, 830 (Minn.2002). Minn.Stat. § 289A.40, subd. 1, states in relevant part:

> [A] claim for a refund of an overpayment of state tax must be filed within 3–1/2 years from the date prescribed for filing the return, * * * *or one year from the date of an order assessing tax * * *, upon payment in full of the tax, penalties, and interest shown on the order* or return made by the commissioner, whichever period expires later.

(Emphasis added.) Here, the later-expiring period is the period measured one year from the date of the order assessing tax. The Tax Court held that, under the plain language of the statute, the one-year filing period is triggered by the date of the order assessing tax, here, September 24, 2001.

MBNA argues that several rules of statutory construction weigh in favor of its position. First, Minn.Stat. § 645.16 (2004) provides that "[e]very law shall be construed, if possible, to give effect to all of its provisions." Additionally, "words and phrases are construed according to rules of grammar and according to their common and approved usage." Minn.Stat. § 645.08(1) (2004). And finally, "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2004).

MBNA argues that reading the statute to trigger the one-year filing period upon the date of the Assessment would render the language "upon payment in full of the tax" meaningless, in violation of the canon of statutory construction that each provision in a statute is to be given meaning. Instead, given the plain meaning of "upon," which MBNA argues refers to a time frame, the payment of the tax must trigger the filing period.

■■■■ MBNA's arguments fail. The words of the statute are clear. The statute states that the filing period shall be "one year *from the date of the order assessing tax.*" Minn.Stat. § 289A.40, subd. 1. Absent ambiguity, we cannot avoid the plain meaning of words to give effect to the spirit of the law. Minn.Stat. § 645.16. Reading the statute in this way does not render "upon payment in full of the tax, penalties, and interest" meaningless. The key word in this phrase is "full"—the phrase adds a condition, namely that neither a partial payment of the tax nor a payment of the tax but not penalties and interest gives rise to the right to claim a refund. Only a payment in full of tax,

penalties, and interest gives rise to the entirely statutory right to claim a refund, and the period to claim the refund is limited by the entirely separate and distinct statutory language regarding timing—one year from the date of an order assessing tax. Reading the statute this way, every clause is given meaning, and the plain meaning of the statute is given effect.

It is also clear from the history of the statute that the legislature specifically intended the claims filing period to be triggered on the date of the order assessing tax, not upon payment of the tax. An amendment to section 289A.40, subd. 1, signed into law on June 1, 1995, altered the calculation of the one-year period. Prior to that time, the statute stated that, as relevant here, "a claim for a refund of an overpayment of state tax must be filed within * * * two years from the time the tax is paid in full." Minn.Stat. § 289A.40, subd. 1 (1994). The 1995 amendment not only shortened the filing period to one year, but also added the language "from the date of an order assessing tax." Act of June 1, 1995, ch. 264, art. 13, § 11, 1995 Minn. Laws 2872, 3053–54. As the Commissioner correctly asserts, had the legislature merely intended to shorten the time period, the additional language regarding the date of an assessment order, wholly absent from the 1994 statute, would have been omitted. The legislature would merely have changed the time period. Further, the amendment added the language that prohibits a refund claim until not only the tax but also all "penalties and interest shown on the order" are paid in full. *Id.* In light of the foregoing, we hold that the period for filing a refund for overpayment of tax under Minn.Stat. § 289A.40, subd. 1, is triggered by the date of an order assessing tax.

## II

We turn next to MBNA's argument that the failure of the Commissioner to state the one-year limitation period, in writing, violates Minnesota law and, as a consequence of this failure, MBNA's refund claim is not barred. Two statutes impose requirements on the tax assessment order here.

First, the statute authorizing such assessments states, in relevant part:

When no return has been filed, the commissioner ... may send an order of assessment under this subdivision. The order must explain the basis for the assessment and must explain the taxpayer's appeal rights.

Minn.Stat. § 289A.37, subd. 1(a) (2004). The Assessment at issue in the present case did meet the requirements of this section—it explained the taxpayer's appeal rights. But MBNA asserts that the Minnesota Taxpayers' Bill of Rights, passed after the above statute was enacted, adds additional requirements with which the Commissioner failed to comply. The Commissioner argues that the requirements under the Taxpayers' Bill of Rights are "separate and distinct" from those in the assessment statute. MBNA argues that the Taxpayers' Bill of Rights Act's universal requirements are triggered by its broad language, which provides that "[t]he appropriate statement prepared in accordance with subdivisions 1 and 2 must be distributed by the commissioner to all taxpayers contacted with respect to the determination or collection of a tax, other than the providing of tax forms." Minn. Stat. § 270.0603, subd. 3 (2004). Subdivision 1 requires that the statement provide the following information:

(1) the rights and obligations of the Department of Revenue and the taxpayer during an audit;

(2) the procedures by which a taxpayer may appeal an adverse decision of

the department, including administrative and judicial appeals;

(3) *the procedures for filing refund claims and filing of taxpayer complaints;* and

(4) the procedures that the department may use in enforcing the tax laws, including assessment, jeopardy assessment, levy and distraint, and the filing of liens.

Minn.Stat. § 270.0603, subd. 1 (2004) (emphasis added). It is undisputed that the Assessment explained the taxpayer's appeal rights as required by the statute authorizing the Assessment, but did not explain the procedures for filing refund claims or taxpayer complaints as required by the Taxpayers' Bill of Rights.

▪ The triggering language for the Taxpayers' Bill of Rights is broad—any statement to "taxpayers contacted with respect to the determination or collection of a tax" must meet the four requirements outlined above. The Commissioner cannot argue that the Assessment in the present case is not a statement "with respect to the determination or collection of a tax." Absent any statutory language indicating that the requirements of the Taxpayers' Bill of Rights will not be enforced when there is an order of assessment under Minn.Stat. § 289A.37, and because the requirements of the Taxpayers' Bill of Rights do not conflict with the requirements of Minn.Stat. § 289A.37, we read the plain language of the Taxpayers' Bill of Rights to create requirements in addition to those of the statute authorizing the assessment order.

▪ The Assessment in the present case made no mention of "the procedures for filing refund claims and filing of taxpayer complaints" as required by Minn. Stat. § 270.0603, subd. 1. The procedures for filing a refund claim are obviously distinct from the procedures for appeal to the Tax Court, which were included in the order, and therefore the Assessment did not meet the requirements of the Taxpayers' Bill of Rights.

▪ The parties differ with respect to what effect nonconformity of the Assessment should have on the one-year period for filing a refund claim. The Commissioner essentially argues that the Taxpayers' Bill of Rights is hortatory, and does not create any remedy for the taxpayer. In support of this proposition, the Commissioner cites Minn.Stat. § 270.0603, subd. 3, concerning statements required by the Taxpayers' Bill of Rights which states that "[f]ailure to receive the statement does not invalidate the determination or collection action." MBNA argues, however, that while Minn.Stat. § 270.0603, subd. 3, makes clear that the actual determination of tax in the order of assessment remains valid, the provision is silent as to what effect a nonconforming assessment has on the statute of limitations for filing a refund claim. Allowing the Commissioner to rely on a non-conforming assessment to trigger the one-year refund filing period and thereby deny the taxpayer his day in court, MBNA argues, would not only be inequitable, but would essentially write the Taxpayers' Bill of Rights out of the law.

▪ We recognize that the silence of the Taxpayers' Bill of Rights as to what effect non-conformity should have on the statute of limitations for a taxpayer's claim creates ambiguity. But we note that any ambiguities in the law must be interpreted in favor of the taxpayer. *Dumont v. Comm'r of Taxation*, 278 Minn. 312, 317, 154 N.W.2d 196, 200 (Minn.1967). This rule of construction is particularly relevant here, where the Commissioner seeks to use an ambiguity in the Taxpayers' Bill of Rights to bar the taxpayer from ever presenting a claim.

In light of this rule of construction and the language of the Taxpayers' Bill of Rights, we hold that the non-conforming assessment did not trigger the one-year filing period for refund claims under Minn. Stat. § 289A.40, subd. 1. The decision of the tax court is reversed.

Reversed.

Took no part, HANSON, J.