**Alissa Christine BEARDSLEY,
Appellant,**

v.

**Dante' Antonio GARCIA,
Jr., Respondent.**

No. A06–922.

Supreme Court of Minnesota.

July 31, 2008.

Elizabeth J. Richards, MN Coalition for Battered Women, Inc., St. Paul, Beverly Balos, Minneapolis, for Appellant.

Robert William Gadtke, Gadtke and Beyer, Edina, for Respondent.

Rana Suzanne Alexander Fuller, Kristine Chance Lizdas, Minneapolis, Jessie Ree Nicholson, Janet C. Werness, South-

ern MN Regional Legal Services, Inc., St. Paul, Charles H. Thomas, Mankato, for Amicus.

## OPINION

ANDERSON, G. BARRY, Justice.

Appellant Alissa Christine Beardsley and respondent Dante' Antonio Garcia, Jr., signed a recognition of parentage acknowledging that Garcia is the biological father of D.G., one of Beardsley's sons. The district court subsequently granted Beardsley an order for protection against Garcia, but it granted Garcia temporary parenting time with D.G. in the order. Beardsley appealed the district court's grant of temporary parenting time to Garcia, and the court of appeals affirmed. We affirm the decision of the court of appeals.

On March 2, 2006, Beardsley petitioned for an order for protection (OFP) against Garcia.[1] Beardsley stated in the petition that she has two minor sons, A.F. and D.G., but that she and Garcia have no children in common. Beardsley alleged that on February 24, 2006, Garcia threatened to split her head open, knock out her teeth, and possibly kill her. She also alleged that A.F. overheard Garcia threaten to kill her 2 days later when A.F. answered a phone call from Garcia and Beardsley refused to take the call. The district court issued an ex parte temporary OFP and scheduled a hearing on Beardsley's petition.

At the hearing on Beardsley's petition, which was held on March 16, 2006, Garcia did not challenge the issuance of the OFP but requested parenting time with D.G., who was 20 months old at the time. Garcia provided the district court with a recognition of parentage (ROP) in which he and Beardsley acknowledged that they are D.G.'s biological parents, but the record indicates that Garcia's paternity of D.G. had not been adjudicated. Beardsley informed the court that although Garcia is not D.G.'s biological father, he had "insisted on signing the birth certificate." Beardsley said that she did not believe that D.G. would be safe with Garcia because of Garcia's "anger problems" and that she feared that Garcia would "threaten somebody else in front of [D.G.]."

Later in the day on March 16, the district court issued a 1-year OFP that prohibited Garcia from committing any acts of domestic abuse against Beardsley, entering Beardsley's residence, and contacting Beardsley by any means. The court made no finding that domestic abuse had occurred, and the OFP stated that Garcia had denied the allegations of the petition but had agreed to the issuance of the OFP. The court granted in part and denied in part Garcia's request for parenting time, awarding him parenting time with D.G. for 2 hours each weekend at a supervised facility.

Beardsley appealed the district court's grant of temporary parenting time to Garcia, arguing that Minn.Stat. § 257.541, subd. 3 (2006), prohibits a district court from awarding parenting time to an ROP father in an OFP proceeding. The court of appeals affirmed, holding that the district court had both subject matter jurisdiction and statutory authority to award temporary, supervised parenting time to Garcia in the OFP. *Beardsley v. Garcia*, 731 N.W.2d 843, 851–52 (Minn.App.2007). The court of appeals also held that Beards-

---

**1.** Beardsley had previously obtained an OFP against Garcia that expired on February 28, 2006.

ley's due process rights were not violated. *Id.* at 850. We granted Beardsley's petition for review on the issue of whether the district court had statutory authority to award Garcia temporary parenting time with D.G. as part of the OFP proceeding.

■■■ The object of statutory interpretation "is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2006). "When the language of a statute is plain and unambiguous, it is assumed to manifest legislative intent and must be given effect." *Burkstrand v. Burkstrand,* 632 N.W.2d 206, 210 (Minn. 2001). But when the statutory language is ambiguous, we may look to other sources to ascertain legislative intent. Minn.Stat. § 645.16. "An ambiguity exists only where a statute's language is subject to more than one reasonable interpretation." *State v. Mauer,* 741 N.W.2d 107, 111 (Minn.2007). "Statutory interpretation is a question of law that we review de novo." *State v. Al–Naseer,* 734 N.W.2d 679, 683 (Minn.2007).

The Domestic Abuse Act, Minn.Stat. § 518B.01 (2006), "provides a process whereby domestic abuse victims may petition for protection and relief." *Burkstrand,* 632 N.W.2d at 209. It provides for "an action known as a petition for an order for protection in cases of domestic abuse" and requires that a petition for an OFP "allege the existence of domestic abuse." Minn.Stat. § 518B.01, subd. 4. If the petition "alleges an immediate and present danger of domestic abuse, the court may grant an ex parte order for protection." *Id.,* subd. 7(a). Otherwise, after giving notice to the alleged abuser and holding a hearing, the court may grant the petitioner a wide array of relief in an OFP. *Id.,*

subd. 6(a). In particular, the court may "establish temporary parenting time with regard to minor children of the parties on a basis which gives primary consideration to the safety of the victim and the children." *Id.,* subd. 6(a)(4). Because section 518B.01, subd. 6(a)(4), authorizes a court to award temporary parenting time in an OFP proceeding, the district court had the authority to award Garcia parenting time in the March 2006 OFP unless he is excluded from the scope of the statute.

Beardsley argues that Garcia is excluded from the scope of section 518B.01, subd. 6(a)(4), because he is an unadjudicated father whose paternity has been acknowledged in an ROP. Under Minn.Stat. § 257.75, subd. 1 (2006), a child's father and a child's mother "who was not married to the child's father nor to any other man when the child was conceived [or] * * * born may" acknowledge under oath in an ROP "that they are the biological parents of the child and wish to be recognized as the biological parents." An ROP is "a basis for bringing an action to award * * * parenting time to either parent," and, subject to exceptions not implicated in this case, an ROP "has the force and effect of a judgment or order determining the existence of the parent and child relationship." Minn.Stat. § 257.75, subd. 3 (2006). Such a "judgment or order of the court determining the existence * * * of the parent and child relationship is determinative for all purposes." Minn.Stat. § 257.66, subd. 1 (2006). Therefore, D.G. is Garcia's "minor child" for purposes of section 518B.01, subd. 6(a)(4), which authorizes a district court to "establish temporary parenting time with regard to minor children of the parties."[2]

---

**2.** We agree with the dissent that an ROP does not *automatically* entitle an ROP father to parenting time with his child. But there is no statutory language supporting the dissent's assertion that "the ROP statute stat[es] that a ROP father has no right to parenting time." Rather, an ROP father may *obtain* the right to parenting time pursuant to an action to deter-

A father whose paternity has been acknowledged in an ROP may commence an action to determine parenting time "pursuant to chapter 518 without an adjudication of parentage," but "[u]ntil an order is entered granting custody to another, the mother has sole custody." Minn.Stat. § 257.75, subd. 3. Minnesota Statutes § 257.541, subd. 3, also permits an ROP father to commence an action to determine parenting time under chapter 518, providing as follows:

> If paternity has been recognized under section 257.75 [the ROP statute], the father may petition for rights of parenting time or custody in an independent action under section 518.156. * * * An action to determine custody and parenting time may be commenced pursuant to chapter 518 without an adjudication of parentage. These proceedings may not be combined with any proceeding under chapter 518B.

Relying on section 257.75, subd. 3, and section 257.541, subd. 3, Beardsley argues that chapter 518 is the exclusive means by which Garcia may obtain parenting time and that the district court therefore lacked authority to award him temporary parenting time in the March 2006 OFP. But because section 257.75, subd. 3, and section 257.541, subd. 3, provide that an ROP father "may" petition for parenting time under chapter 518, the statutes are permissive rather than mandatory. *See* Minn. Stat. § 645.44, subd. 15 (2006) (" 'May' is permissive."). These provisions do not state that chapter 518 is the exclusive means by which an ROP father may obtain parenting time. We have said "that before a statute may be construed as mandatory it must contain negative terms importing a plain legislative intent that acts authorized therein are to be performed only in a prescribed manner * * * or language

manifesting a positive legislative prohibition against their performance in ways other than those specified." *Agassiz & Odessa Mut. Fire Ins. Co. v. Magnusson,* 272 Minn. 156, 165, 136 N.W.2d 861, 868 (1965). Neither section 257.75, subd. 3, nor section 257.541, subd. 3, excludes an ROP father from the scope of section 518B.01, subd. 6(a)(4).

Beardsley also argues that the prohibition against combining a chapter 518 action to determine custody or parenting time with a domestic abuse proceeding, *see* Minn.Stat. § 257.541, subd. 3, reflects the legislature's determination that it is improper to address parenting time issues for ROP fathers in OFP proceedings. But Garcia never sought or received a custody or parenting time order under chapter 518; rather, he sought and received a temporary order for parenting time as part of an OFP proceeding under section 518B.01. Accordingly, the prohibition against combining a chapter 518 action with a domestic abuse proceeding has no bearing on the outcome of this case.

We also reject the dissent's conclusion that an ambiguity exists as to whether a district court has the statutory authority to award temporary parenting time in an OFP to an unadjudicated father whose paternity has been acknowledged in an ROP. Section 518B.01, subd. 6(a)(4), authorizes a court to award temporary parenting time in an OFP proceeding, and an ROP father is not excluded from the scope of that statute. The dissent creates an ambiguity where none exists by reading an exclusivity requirement into section 257.75, subd. 3, and section 257.541, subd. 3.

We especially reject the dissent's assertion that the silence of section 518B.01, subd. 6(a)(4), regarding "who can ask for this relief or to whom this relief can be

mine parenting time or, as in this case, in an

OFP under section 518B.01, subd. 6(a)(4).

awarded" contributes to the ambiguity. The dissent cites *Burkstrand v. Burkstrand,* 632 N.W.2d 206 (Minn.2001), and *MBNA America Bank, N.A. v. Commissioner of Revenue,* 694 N.W.2d 778 (Minn. 2005), for the proposition that silence on an issue can create an ambiguity in statutory language.

The statute at issue in *Burkstrand* was Minn.Stat. § 518B.01, subd. 7(c) (2000), which provided that when a district court issues an ex parte OFP, a hearing must be held within 10 days of the court's receipt of a request for a hearing by the respondent and within 7 days of the issuance of the OFP if the hearing is requested by the petitioner. 632 N.W.2d at 209. The district court issued an ex parte OFP on December 28, 1999, but the hearing was not held until January 21, 2000. *Id.* at 207–08. Minnesota Statutes § 518B.01, subd. 7(c), did not specify the consequence of holding a hearing outside the statutory time frame, and the parties disputed whether the district court's failure to comply with the statutory time frame resulted in the loss of subject matter jurisdiction. *Burkstrand,* 632 N.W.2d at 210. We concluded that the statute was ambiguous in light of the statutory silence on the issue. *Id.*

We also recognized that statutory silence can create ambiguity in *MBNA,* where a taxpayer filed its refund claims for corporate franchise tax after the expiration of the refund filing period set forth in Minn.Stat. § 289A.40, subd. 1 (2004). 694 N.W.2d at 779–80. Minnesota Statutes § 270.0603, subds. 1(3), 3 (2004), required the Commissioner of Revenue to provide a statement explaining the procedures for filing refund claims to a taxpayer "contacted with respect to the determination or collection of a tax," and it was undisputed that the taxpayer's assessment did not explain these procedures. *MBNA,*

694 N.W.2d at 781–82. The parties disputed the effect of the nonconformity on the refund filing period, and we concluded that the silence of section 270.0603 on the subject created ambiguity. *MBNA,* 694 N.W.2d at 782.

In both *Burkstrand* and *MBNA,* the relevant statutes were *completely silent* on the contested issues—the consequence of a district court's failure to comply with the statutory time frame in *Burkstrand* and the effect of a nonconforming assessment on the refund filing period in *MBNA.* Section 518B.01, subd. 6(a)(4), in contrast, authorizes a district court issuing an OFP to establish temporary parenting time. The dissent thus suggests that even where the facts of a case fall within the scope of a general statutory rule, the statute is ambiguous if it does not explicitly address the *particular facts* of the case. Put another way, the effect of using silence to create an ambiguity under these circumstances would be to use silence to vitiate otherwise valid statutory authority. We refuse to apply the ambiguity-created-by-silence principle recognized in *Burkstrand* and *MBNA* here where a general grant of statutory authority to award parenting time already exists.

■ Finally, we reject the dissent's contention that our decision "has the perverse consequence of rewarding acts of domestic violence." The decision to award temporary parenting time in an OFP is within the discretion of the district court, which is required to give "primary consideration to the safety of the victim and the children." Minn.Stat. § 518B.01, subd. 6(a)(4). In this case, the district court did not make any findings that domestic abuse had actually occurred, Beardsley did not allege that Garcia had ever threatened or committed an act of violence against D.G., and the district court, in the interests of safety, properly limited the temporary parenting

time award to 2 hours a week at a supervised facility. "[T]he discretion of the trial court in deciding questions relating to visitation is extensive," *Manthei v. Manthei,* 268 N.W.2d 45, 45 (Minn.1978), and the facts of this case indicate that the district court acted within its discretion in awarding temporary parenting time to Garcia.

We have stated that "we will not read into a statute a provision that the legislature has omitted, either purposely or inadvertently." *Reiter v. Kiffmeyer,* 721 N.W.2d 908, 911 (Minn.2006). Beardsley argues that we should effectively rewrite section 257.541, subd. 3, to read, "If paternity has been recognized under section 257.75, the father may petition for rights of parenting time or custody [only] in an independent action under section 518.156." The prerogative of amending a statute in such a fashion belongs to the legislature, not to this court. Accordingly, we hold that the unambiguous language of Minn. Stat. § 518B.01, subd. 6(a)(4), authorizes a district court issuing an order for protection to award temporary parenting time to an unadjudicated father whose paternity has been acknowledged in an ROP.

Affirmed.

MAGNUSON, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

MEYER, Justice (dissenting).

We are asked to determine whether a district court may award temporary parenting time to an unmarried father in an action brought against him for an order for protection under the Domestic Abuse Act, if that unmarried father has signed a recognition of parentage but has not previously obtained a court order granting him parenting time with the child who is the subject to the recognition of parentage. The majority concludes that the Domestic Abuse Act unambiguously gives a district court such authority. I respectfully dissent.

In this case, we are asked to interpret provisions from three statutes, the Domestic Abuse Act, Minn.Stat. § 518B.01 (2006), the Parentage Act, Minn.Stat. §§ 257.51–.74 (2006), and the Recognition–of–Parentage Statute, Minn.Stat. § 257.75 (2006). Statutory interpretation is an issue of law that is reviewed de novo. *State v. Mauer,* 741 N.W.2d 107, 111 (Minn.2007). When interpreting statutes, the goal is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2006). "When the language of a statute is plain and unambiguous, it is assumed to manifest legislative intent and must be given effect." *Burkstrand v. Burkstrand,* 632 N.W.2d 206, 210 (Minn.2001). Statutory language is ambiguous if it is susceptible to more than one reasonable interpretation. *Mauer,* 741 N.W.2d at 111. If statutory language is ambiguous, this court may ascertain the legislature's intent by considering a number of matters, including the legislative history, the occasion and necessity for the law, and the consequences of various interpretations. Minn.Stat. § 645.16.

The Domestic Abuse Act provides protection to victims of domestic violence by giving them an expedited way in which to petition for and receive a court order prohibiting further acts of domestic abuse and providing immediate relief to a victim and his or her children. *Burkstrand,* 632 N.W.2d at 209; *see also Baker v. Baker,* 494 N.W.2d 282, 285 (Minn.1992) (superseded in part by statute in *Burkstrand,* 632 N.W.2d 206). The court order is called an order for protection. Minn.Stat. § 518B.01, subd. 4. The Domestic Abuse Act allows the district court to grant a wide array of relief in an order for protec-

tion. In particular, the district court can "award temporary custody or establish temporary parenting time with regard to minor children of the parties on a basis which gives primary consideration to the safety of the victim and the children." Minn.Stat. § 518B.01, subd. 6(a)(4).

The Parentage Act "provides the exclusive [statutory] basis for standing to bring an action to determine paternity." *Witso v. Overby*, 627 N.W.2d 63, 65–66 (Minn. 2001). Under the Parentage Act, a biological mother of a child who was not married to the child's father when the child was born or conceived has sole custody of the child until specific court proceedings are held that determine custody issues. Minn. Stat. § 257.541, subd. 1 (2006). As a result, an unmarried father has no right to either custody of, or parenting time with, a child.

Unmarried fathers, however, can file a court action under the Parentage Act and ask to be adjudicated the father of a particular child. Minn.Stat. § 257.57. In an order or judgment issued under the Parentage Act, a court will determine the existence of the parent and child relationship, and such an order or judgment "shall contain provisions concerning the duty of support, the custody of the child, * * * [and] parenting time with the child." Minn.Stat. § 257.66, subds. 1, 3. Fathers whose paternity has been established under the Parentage Act are referred to as adjudicated fathers.

In 1993, the legislature created the Recognition–of–Parentage Statute (ROP).[1] Act of May 27, 1993, 1st Spec. Sess., ch. 1, art. 6, § 40, 1993 Minn. Laws 3021, 3288–90 (codified at Minn.Stat. § 257.75 (2006)). A ROP allows unmarried parents to sign a document indicating they are the biological parents of a particular child. Minn.Stat. § 257.75, subd. 1.[2] A ROP has "the force and effect of a judgment or order determining the existence of the parent and child relationship under section 257.66 [of the Parentage Act]." Minn.Stat. § 257.75, subd. 3. However, unlike a court order adjudicating paternity, a ROP does not address issues of custody or parenting time. By signing a ROP, an unmarried father does not receive either the right to custody of the child or the right to have parenting time with the child. The ROP statute expressly states that "[u]ntil an order is entered granting custody to another, the mother has sole custody." *Id.*

The law provides a mechanism for a ROP father to obtain either custody of, or parenting time with, his child. The ROP statute states that a ROP is "a basis for bringing an action to award custody or parenting time to either parent" and that "[a]n action to determine custody and parenting time may be commenced pursuant to chapter 518 without an adjudication of parentage." Minn.Stat. § 257.75, subd. 3. In addition, the Parentage Act provides that:

1. Prior to 1993, an unmarried father and mother could sign a document called a declaration of parentage, in which each stated that they were the biological parents of the child. Minn.Stat. § 257.34, subd. 1 (2006). By signing a declaration of parentage, an unmarried father created a presumption of paternity under the Parentage Act. *Id.,* subd. 1(c). However, an unmarried father was still required to establish his paternity through a court action under the Parentage Act. If a father

signed a declaration of parentage, the father's right to custody and parenting time were determined as part of the proceeding under the Parentage Act. Minn.Stat. §§ 257.541, subd. 2, 257.66, subd. 3. Minnesota stopped using declarations of parentage on August 1, 1995. Minn.Stat. § 257.34, subd. 4 (2006).

2. I will refer to a recognition of parentage as a ROP and to a father who has signed a recognition of parentage as a ROP father.

[i]f paternity has been recognized under section 257.75, the father may petition for rights of parenting time or custody in an independent action under section 518.156. * * * The provisions of chapter 518 apply with respect to the granting of custody and parenting time. * * * *These proceedings may not be combined with any proceeding under chapter 518B [the Domestic Abuse Act].* Minn.Stat. § 257.541, subd. 3 (emphasis added).

Through the Parentage Act and the ROP statute, the legislature has made the decision to treat unmarried fathers differently than married fathers when it comes to the issues of custody and parenting time. It is not the purview of this court, but the policy decision of the legislature, that unmarried mothers have sole custody of their children absent a court order granting custody or parenting time rights to the father. Unlike a married father, whatever "custodial right" the unmarried father may have does not exist until a court becomes involved and determines those rights pursuant to either the Parent-

age Act or the ROP statute. *See Morey v. Peppin,* 375 N.W.2d 19, 23 (Minn.1985) (noting that the Parentage Act "preserves the common law right to custody in the mother and absence of any legal right to custody in the putative father pending the establishment of paternity"). Simply put, the legislature has decided that a father who does not marry the mother of his children has no right to custody of, or parenting time with, his children absent a court order awarding him such rights.

I disagree with the majority's conclusion that the Domestic Abuse Act unambiguously allows a district court to award parenting time to a ROP father who has no preexisting right to custody of, or parenting time with, a child as part of an order for protection proceeding brought against him. The operative language of the Domestic Abuse Act states that "[u]pon notice and hearing, the court may * * * establish temporary parenting time with regard to minor children of the parties on a basis which gives primary consideration to the safety of the victim and the children."[3] Minn.Stat. § 518B.01,

---

**3.** This language indicates what can be awarded—temporary parenting time. It also indicates who can be the subject of the parenting time—the minor children of the parties. The language, however, does not indicate either who can ask for this relief or to whom this relief can be awarded. Instead, it is silent on this issue. Silence on an issue can create ambiguities in statutory language, and we have expressly noted this very fact with respect to the Domestic Abuse Act. *Burkstrand,* 632 N.W.2d at 210 (concluding that Domestic Abuse Act was ambiguous with respect to issue of whether a district court could issue an order for protection more than seven days after it issued an ex parte order for protection because "the statute is silent on the consequences of the district court's failure to hold a hearing within the statutory time frames"); *see also MBNA Am. Bank, N.A. v. Comm'r of Revenue,* 694 N.W.2d 778, 782 (Minn.2005) (finding silence on a particular issue created ambiguity in the statute). This language is

also different from other clauses of subdivision 6 of Minn.Stat. § 518B.01, which outline the relief that may be ordered by the district court and which explicitly state who is entitled to the relief or to whom the relief can apply. *Compare* Minn.Stat. § 518B.01, subd. 6(1), (2), (3), (7), (9), (10) (indicating that the abusing party may be ordered to do certain things or prevented from doing others); *id.,* subd. 6(6) (allowing the court to order the parties to go to counseling or other social services, "upon request of the petitioner"); *id.,* subd. 6(8) (allowing the court to "restrain one or both parties" from transferring, encumbering, concealing, or disposing of property). Given the fact that the legislature has expressly stated in some instances that relief can be awarded to the victim of domestic violence and in others that it can apply to both parties, I cannot assume that the legislature intended to give the district court the authority to award temporary parenting time to any respondent who has fathered a child

subd. 6(a)(4). The majority, relying on language from the Parentage Act, concludes that D.G. is a "minor child" of Garcia and Beardsley because of the ROP. But in making this determination, the majority ignores key language from the ROP statute.

The majority begins by citing language from the ROP statute stating that a ROP "has the force and effect of a judgment or order determining the existence of the parent and child relationship under section 257.66 [of the Parentage Act]." Minn.Stat. § 257.75, subd. 3. The majority then determines that D.G. is a "minor child[ ] of the parties" within the meaning of 518B.01, subd. 6(a)(4) based on language from the Parentage Act stating that "the judgment or order of the court determining the existence * * * of the parent and child relationship is determinative for all purposes." Minn.Stat. § 257.66, subd. 1. This language from the Parentage Act, however, is contradicted by language from the ROP statute expressly limiting the effect a ROP has on custody and parenting time issues.

A ROP father has no right to custody of, or parenting time with, his child simply because he signed a ROP. While a ROP is "determinative for *all other purposes* related to the existence of the parent and child relationship," it is not so when it comes to custody and parenting time; a ROP merely provides "a basis for bringing an action to award custody or parenting time to either parent." Minn.Stat. § 257.55, subd. 3(1), (2) (emphasis added). The majority has no explanation as to how this language can be reconciled with its conclusion that D.G. is a minor child of the parties for purposes of parenting time awards under

the Domestic Abuse Act. To interpret the Domestic Abuse Act as the majority has—to allow a district court to award parenting time for the first time to a ROP father in an order for protection proceeding—either ignores, or is completely contrary to, the language in the ROP statute stating that a ROP father has no right to parenting time. *See* Minn.Stat. §§ 645.16 (stating that if possible, a statute must be construed to give effect to all its provisions), 645.26, subd. 1 (stating that when a general provision in a law is in conflict with a specific provision, they should be construed so that effect can be given to both); *see also Miller v. Colortyme, Inc.,* 518 N.W.2d 544, 551 (Minn.1994) ("A statute is to be construed, whenever reasonably possible, in such a way as to avoid irreconcilable differences and conflict with another statute.").

In addition, the Parentage Act and the ROP statute provide a path for a ROP father to obtain parenting time with the child who is the subject of the ROP. The father "may petition" for parenting time in an independent action pursuant to chapter 518. Minn.Stat. § 257.541, subd. 3; *see also* Minn.Stat. § 257.75, subd. 3. These statutes provide no indication that a ROP father could use an order for protection proceeding brought against him as another way to effectuate his right to parenting time. To the contrary, the Parentage Act expressly states that a ROP father's petition for parenting time "may not be combined with any proceeding under chapter 518B." Minn.Stat. § 257.541, subd. 3. It is hard to see how the legislature could have intended a ROP father to activate his right to parenting time for the first time in an order for protection proceeding when the Parentage Act states that a decision

with the petitioner in an order for protection proceeding. *See ILHC of Eagan, LLC v. County of Dakota,* 693 N.W.2d 412, 419 (Minn. 2005) (noting that a provision in a statute

must be read in context with other provisions of the same statute in order to determine meaning).

regarding a ROP father's right to parenting time and an order for protection proceeding are supposed to be kept separate.

The majority concludes that the prohibition against combining a petition for parenting time brought by a ROP father under chapter 518 with a proceeding under the Domestic Abuse Act, chapter 518B, has no bearing on the outcome of this case because Garcia never sought or received a parenting time order under chapter 518. I disagree.

I believe that the proceeding that cannot be combined with an order for protection proceeding is a ROP father's request to obtain parenting time in the first place, whether it is through an independent action or attempted request for such relief in an order for protection proceeding. To interpret this language as the majority does allows a ROP father to achieve, through an indirect means, that which he is expressly prohibited from doing. And "[i]t is to be presumed that the legislature did not intend the absurd result of permitting by indirection that which it has prohibited by direct provision." *Gale v. Comm'r of Taxation,* 228 Minn. 345, 349, 37 N.W.2d 711, 715 (Minn.1949).

I conclude that when the provision in the Domestic Abuse Act regarding a district court's authority to "establish temporary parenting time" is read in conjunction with relevant provisions in the Parentage Act and the ROP statute, an ambiguity exists with respect to a district court's authority to grant a ROP father's request for parenting time when an order for protection action has been brought against him but where he has not previously brought an action to effectuate his right to parenting time. Because I find that the language in the Domestic Abuse Act and the ROP statute is ambiguous with respect to whether the district court has the authority to award temporary parenting time in this case, I must ascertain the legislature's intent.

The purpose of the Domestic Abuse Act is to provide victims of domestic abuse and their children with quick relief from the courts to help protect them from acts of family violence. *State v. Errington,* 310 N.W.2d 681, 682 (Minn.1981). The Domestic Abuse Act has been amended numerous times since it was enacted. Each time it was expanded to provide additional protection by broadening either the definition of a "family or household member" who can seek protection under the act, or the definition of domestic abuse.[4] In addition, from time to time it was amended to provide wider relief to victims or to make it

---

4. *See* Act of June 30, 2001, ch. 8, art. 10, § 1, 2001 Minn. Laws 1st Spec. Sess.1943, 2092 (codified at Minn.Stat. § 518B.01, subd. 2(a)(3)) (expanding the definition of domestic abuse to include interference with a 911 call); Act of May 25, 1995, ch. 226, art. 7, § 3, 1995 Minn. Laws 1753, 1881–82 (codified at Minn. Stat. § 518B.01, subds. 2(b)(7) & 4(a)) (expanding definition of "family or household member" to include persons involved in a significant romantic or sexual relationship and allowing an order for protection to be brought by a family or household member for another family or household member, a guardian, or a minor age 16 or older on his or her own behalf); Act of May 20, 1993, ch. 326, art. 2, § 4, 1993 Minn. Laws 1974, 2000 (codified at Minn.Stat. § 518B.01, subd. 2(a)(ii)) (expanding definition of "domestic abuse" to include terroristic threats against any family or household member); Act of June 1, 1991, ch. 271, § 7, 1991 Minn. Laws 1242, 1246 (codified at Minn.Stat. § 518B.02, subd. 2(b)) (expanding definition of "family or household member" to include a pregnant woman who alleges the respondent is the father); Act of Apr. 22, 1983, ch. 52, § 1, 1983 Minn. Laws 176, 176 (codified at Minn. Stat. § 518B.01, subd. 2(b)(1), (4) & (5)) (expanding the definition of "family or household member" to include former spouses, persons who used to live together, and persons who have a child in common).

easier for victims of domestic violence and their children to obtain relief.[5] There is nothing in the language of the Domestic Abuse Act or in its history to suggest that its purpose includes providing a way for the abusive party to establish rights that he or she has failed to establish before the abusive party committed acts of domestic abuse. It is not consistent with the purpose of the Domestic Abuse Act to allow a ROP father with no preexisting legal right to parenting time to ask for and receive parenting time when an order for protection proceeding has been brought against him.

Further, allowing a ROP father to use an order for protection proceeding as a vehicle for effectuating his right to parenting time has the perverse consequence of rewarding acts of domestic violence. If he wants parenting time, a ROP father who has not been accused of committing domestic violence has to file a petition with the court, under Minn.Stat. § 518.156, for parenting time. Minn.Stat. § 257.541, subd. 3. He is required to give written notice of his petition to the mother, and there are additional notice and hearing requirements before the court can grant relief. Minn.Stat. § 518.156, subd. 2; Minn. Gen. R. Prac. 303.03 (requiring at least 14 days' notice for family court motions). Because the provisions of chapter 518 apply to the ROP father's action for parenting time, a district court can "grant such parenting time on behalf of the child and a parent as will enable the child and the parent to maintain a child to parent relationship that will be in the best interests of the child." Minn.Stat. § 518.175, subd. 1(a) (2006); *see also* Minn.Stat. § 257.541, subd. 3. The district court "may not use one [best interest] factor to the exclusion of * * * others," and with its "detailed findings" on each factor, it must "explain how the factors led to its conclusions and to the determination of the best interests of the child." Minn.Stat. § 518.17, subd. 1 (2006).

In an order for protection proceeding, however, a ROP father can make an oral request for and be awarded parenting time at the hearing on the order for protection. Minn.Stat. § 518B.01, subd. 6(a)(4). A district court is not required to make findings on the best interest factors. The primary consideration is safety and, therefore, a ROP father can receive parenting time, as was the case here, simply by showing that the parenting time will not threaten the

---

5. *See* Act of Apr. 26, 2004, ch. 164, § 1, 2004 Minn. Laws 215, 215 (codified at Minn.Stat. § 518B.01, subd. 6a(4)) (making abusive party's release from incarceration a basis for extending an existing order for protection); Act of Apr. 2, 1996, ch. 408, art. 4, § 1, 1996 Minn. Laws 605, 652–54 (codified at Minn. Stat. § 518B.01, subd. 14(h)) (imposing restrictions on a person's right to carry firearms when a firearm is used in connection with a violation of an order for protection); Act of May 25, 1995, ch. 226, art. 7, § 5, 1995 Minn. Laws 1753, 1883 (codified at Minn.Stat. § 518B.01, subd. 6a) (lowering standard of proof required for extensions of existing orders and obtaining a subsequent order); Act of May 10, 1994, ch. 636, art. 2, § 11, 1994 Minn. Laws 2193, 2193–95 (codified at Minn. Stat. § 518B.01, subd. 6(a)(3)) (authorizing a court to exclude abusive party from a reasonable area surrounding victim's dwelling or residence); Act of May 3, 1990, ch. 583, §§ 1, 2, 1990 Minn. Laws 2198, 2198–2200 (codified at Minn.Stat. § 518B.01, subds. 6(a)(8), 7(a)(3)) (authorizing court to exclude abusive party from victim's place of employment); Act of May 23, 1985, ch. 195, § 3, 1985 Minn. Laws 609, 610–11 (codified at Minn.Stat. § 518B.01, subds. 6(c), (h)) (making primary consideration for award of custody or parenting time safety of the victim and the children and allowing for duration of protection orders beyond one year); Act of May 28, 1981, ch. 273, § 2, 1981 Minn. Laws 1236, 1236–37 (codified at Minn.Stat. § 518B.01, subd. 6(f)) (authorizing court to order abusive party to participate in treatment or counseling services).

safety of the child or the mother, and may establish parenting time in an order for protection proceeding "on a basis which gives primary consideration to the safety of the victim and the children." *Id.*

If a ROP father is allowed to use an order for protection proceeding to effectuate his right to parenting time, a ROP father could effectuate his right to parenting time more quickly and by making a much lower showing than a ROP father who has petitioned for parenting time under chapter 518. And he would be able to do this solely because of the fact that he has committed acts of domestic violence. It is contrary to the purpose of the Domestic Abuse Act to reward abusive behavior by granting abusive fathers additional rights that nonabusive fathers do not have.

When the purpose of the Domestic Abuse Act is considered, along with the consequences of adopting Garcia's interpretation, I conclude that the legislature did not intend to allow ROP fathers to use an order for protection proceeding as an alternative route to activating their rights to parenting time. I conclude that a district court cannot award temporary parenting time in an order for protection proceeding brought against a ROP father if that father does not have a prior court order awarding him parenting time with the child who is the subject of the ROP. In the instant case, while Garcia and Beardsley signed a ROP with respect to D.G., Garcia had not petitioned a court and received an order entitling him to parenting time with D.G. prior to the district court issuing the order for protection against Garcia in March 2006. As a result, I would conclude that the district court did not have the authority to award temporary parenting time to Garcia in the March 2006 order for protection.

ANDERSON, PAUL H., Justice (dissenting).

I join in the dissent of Justice Meyer.