In re the Matter of: Shadiyah K. ALJU-BAILAH for herself and ON BEHALF OF A. M. J., petitioner, Respondent,

v.

Aaron JAMES, Appellant.

A17-0153

Court of Appeals of Minnesota.

Filed October 23, 2017

Shadiyah K. Aljubailah (pro se respondent).

Jennifer M. Moore, Moore Family Law, PA, Plymouth, Minnesota (for appellant).

Considered and decided by Reyes, Presiding Judge; Schellhas, Judge; and Stauber, Judge.[*]

## OPINION

STAUBER, Judge

Appellant-father challenges the district court's order for protection (OFP) issued against him for the benefit of respondent-mother and the parties' child, and the order for temporary sole legal and physical custody granted in conjunction with that proceeding. Because the district court did

not abuse its discretion by issuing the OFP as to both mother and child, did not improperly prevent father's attorney from questioning mother, and did not err by ordering temporary legal and physical custody without making custody findings under Minnesota Statutes section 518.17, we affirm.

## FACTS

Shadiyah Aljubailah and Aaron James are the parents of a child, A.J., who was born in 2009. The parties have had a lengthy involvement with the district court and family court services regarding custody and parenting-time issues. Since 2011 family and court service personnel have expressed serious concerns about mother's chemical-health issues. In March 2013, after an evidentiary hearing, the district court granted sole legal and physical custody to father, subject to mother's reasonable parenting time, which was conditioned on her abstinence from alcohol and mood-altering drugs and submitting to hair-follicle testing. Following a 2014 hearing, the district court ordered mother to submit to another hair-follicle test, to complete a rule 25 assessment, and to have supervised parenting time in a public setting.

On October 24, 2016, mother filed a pro se petition for an emergency OFP, alleging that A.J. had (1) shown her bruises on his leg, which he stated were inflicted by his father, and (2) when mother confronted father about the child's report of abuse, he shoved her with such force that she fell backwards into a table and she feared for her and A.J.'s safety. The district court granted an ex parte emergency OFP as to both mother and A.J.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

At an evidentiary hearing on the petition, mother testified that A.J. had indicated that father "[w]hooped" him with a belt when A.J. unintentionally woke father from a nap on October 16, 2016. She testified that when she went to drop A.J. off at father's home, she asked him why he had hit the child, and father told her to "get the f--k out of the house" and that she would "never see [her] son again," and he "became enraged" and shoved her. She introduced evidence in the form of photographs of A.J.'s bruises, which she stated were taken on October 14, 2016, and also photographs of her own bruises taken a week after the incident.

Mother also testified that in 2015, father told her that in order to have overnight visits with A.J., she had to have sex with father, which she did, and he apparently made a video which he threatened to release if she did not continue a sexual relationship with him. She testified that she was fearful for herself and A.J., that father had previous domestic-abuse convictions, and that she had concerns about father's chemical use.

Father testified that the photographs of A.J. submitted by mother were not taken in October, 2016, but in June, because there was green grass in the background. Father testified that A.J.'s bruises were caused when he spanked him and A.J. "jumped and got hit with" the belt. He testified that he had spanked A.J. with a belt because A.J. had lied, but that he did not hit A.J. hard and that A.J. bruises very easily. He testified that he had only spanked A.J. "three to four [times] maybe his whole life."

Father further testified that during the October 2016 incident, mother had arrived late to return A.J., and he told her that until they went back to court, it could be the last time she would see her son. According to him, she told him that she would tell people that he had beaten A.J. He testified that he never touched her and she did not lose her balance or fall. He denied the existence of a video tape or that the parties had a sexual liaison. He acknowledged that another woman obtained an OFP against him in 2006.

The child's guardian ad litem testified that he interviewed A.J., and A.J. corroborated mother's account that father hit him with a belt when he accidentally woke father. According to the guardian ad litem, A.J. indicated that although father had spanked him only four times, the spankings were very hard.

The district court found that, with respect to allegations of domestic abuse, mother's affidavit and testimony were credible and father's testimony was less credible. The district court found that mother had sufficiently established that father committed domestic abuse against herself and A.J. See Minn. Stat. § 518B.01. The district court granted an OFP for the benefit of both mother and A.J. and ruled that their safety required that mother be granted temporary sole legal and temporary sole physical custody of A.J. See id. This appeal follows.

## ISSUES

I. Was the record sufficient to sustain the issuance of an OFP for the benefit of both A.J. and mother?

II. Did the district court improperly preclude father's counsel from questioning mother about the prior custody proceeding?

III. Did the district court err by failing to make best-interests findings in granting temporary custody and parenting time?

## ANALYSIS

Father argues that the district court abused its discretion by granting an OFP

in favor of mother and A.J. He also argues that the district court improperly prevented his counsel from inquiring further into the circumstances of the parties' prior custody proceeding. And he maintains that the district court erred by awarding temporary legal and temporary physical custody to mother without making best-interests findings under Minn. Stat. § 518.17, subd. 1.

## I.

 The Minnesota Domestic Abuse Act provides that an order for protection may be issued if domestic abuse has occurred. Minn. Stat. § 518B.01, subd. 4. "[D]omestic. abuse," means, in relevant part, "physical harm, bodily injury, or assault" or "the infliction of fear of imminent physical harm, bodily injury, or assault" if committed against a family or household member. *Id.*, subd. 2(a). We review the district court's decision to grant an OFP for an abuse of discretion. *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 98 (Minn. App. 2009). The district court abuses its discretion if it misapplies the law or makes factual findings that are unsupported by the record. *Id.* An appellate court will "neither reconcile conflicting evidence nor decide issues of witness credibility." *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004).

 "The definition of 'domestic abuse' under the Act requires either. a showing of present harm or an intention on the part of [the actor] to do present harm." *Andrasko v. Andrasko*, 443 N.W.2d 228, 230 (Minn. App. 1989); *see Chosa ex rel. Chosa v. Tagliente*, 693 N.W.2d 487, 489 (Minn. App. 2005) (concluding that the district court erred by finding that domestic abuse occurred when the petitioner produced evidence of neither "physical harm nor alleged any intent to do present harm" (quotation omitted)). The petitioner must

show the existence of the requirements for granting an OFP by a preponderance of the evidence. *Oberg v. Bradley*, 868 N.W.2d 62, 64 (Minn. App. 2015).

 Father alleges that the record does not support the district court's grant of an OFP as to either mother or A.J. He argues that he did not intend to harm A.J. and that A.J. did not sustain physical harm. In its order, the district court did not address the issue of whether intent to harm is required for the issuance of an OFP based on physical harm. "A reviewing court must generally consider only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted)). Therefore, we decline to address that issue on appeal.

 Father also alleges that A.J. did not sustain physical harm. But he admitted that he struck A.J. with a belt, and mother produced photographic evidence of bruising on the child's legs. Although father testified that these photographs were taken in June, the district court was entitled to credit mother's version of events that they were taken shortly after the October incident. *See Gada*, 684 N.W.2d at 514.

Father also maintains that he physically disciplined A.J. only three or four times and no previous disciplinary incidents resulted in injury. His arguments about prior incidents, however, are not determinative of whether an OFP was warranted based on this incident. Further, the testimony of A.J.'s guardian ad litem supported the issuance of the OFP. *See Oberg*, 868 N.W.2d at 66 (upholding an OFP based in part on testimony of a guardian ad litem). Therefore, we conclude that the evidence sufficiently supports the district court's issuance of the OFP as to the child.

Father also argues that the record does not establish by a preponderance of the evidence that he committed domestic abuse against mother. We agree with father that the allegations regarding his 2015 behavior are insufficient to establish domestic abuse committed against mother. Any threats of a general nature made by father to mother, which did not result in either physical harm or fear of imminent harm, do not rise to the level necessary to support an OFP. *See* Minn. Stat. § 581B.01, subd. 2(a) (defining domestic abuse). But the district court also granted the OFP on the basis of mother's allegation that father shoved her in the October 2016 incident, causing her to fall against a table and sustain injuries. Mother produced a photograph of bruises on her arm from that incident. Father does not deny that the incident occurred. Rather, he argues that his actions involved reasonable use of force to get mother to leave his home, and he did not intend to cause her physical harm. But the district court expressly found his testimony less credible than mother's testimony. On this record, sufficient evidence supports the district court's determination that father committed domestic abuse against mother, and the district court did not abuse its discretion by ordering an OFP as to mother. *See id.*

## II.

Father maintains that the district court abused its discretion by sustaining mother's objection to questioning about the 2013 custody proceeding during her cross-examination by father's attorney. He argues that in making this ruling, the district court improperly limited cross-examination and precluded questioning that would have further illuminated mother's chemical-dependency issues and lack of responsibility in parenting, which were relevant to her credibility and the awards of temporary custody and parenting time. Rulings on the admissibility of evidence lie within the district court's discretion, and this court will not disturb an evidentiary ruling unless it is based on an erroneous view of the law or is an abuse of that discretion. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45–46 (Minn. 1997).

We reject father's argument. "[T]he manner and scope of cross-examination is left to the discretion of the [district] court," and this court will reverse that determination only if the district court abused its discretion. *Murray v. Walter*, 269 N.W.2d 47, 49 (Minn. 1978). The record shows that in cross-examining mother, father's attorney sought to question mother about the prior custody proceeding, and mother, who was acting as her own attorney, questioned the relevance of that inquiry. Father's attorney noted mother's history of chemical dependency and restricted parenting time. The district court then informed the parties that it would take judicial notice of the prior paternity proceeding, and that it had reviewed the 2013 custody order and was aware of its provisions, but that the current issue was whether domestic abuse had occurred. In its OFP, the district court took notice of the 2013 custody order, which detailed family court services' concerns about mother's chemical health issues. *See* Minn. R. Evid. 201(b) (allowing courts to take judicial notice of adjudicative facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"). And mother testified that the parties were not strictly following the terms of the 2013 order, which restricted her parenting time. We conclude that under these circumstances, the district court did not abuse its discretion by declining to allow additional questioning on these mat-

ters and did not improperly limit the scope of cross-examination.

### III.

 Father argues that the district court erred by failing to make particularized findings on the child's best interests when it awarded temporary sole legal and temporary sole physical custody to mother in the OFP proceeding. The nature of the custody findings required in an OFP proceeding presents an issue of statutory interpretation, which we review de novo. *Beardsley v. Garcia*, 753 N.W.2d 735, 737 (Minn. 2008).

In granting an OFP, the district court may "award temporary custody or establish temporary parenting time with regard to minor children of the parties on a basis which gives primary consideration to the safety of the victim and the children." Minn. Stat. § 518B.01, subd. 6(a)(4). In addition, the statute provides that "the court may consider particular best interest factors that are found to be relevant to the temporary custody and parenting time award." *Id.* But the statute further states that "[f]indings under section 257.025 [custody disputes among unmarried parents] 518.17 [custody in marital dissolutions], or 518.175 [parenting time matters] are not required with respect to the particular best interest factors not considered by the court." *Id.*

 When a statute's language is plain and unambiguous, that language manifests legislative intent and must be given effect. *Beardsley*, 753 N.W.2d at 737. If statutory language is ambiguous, meaning that it is subject to more than one reasonable interpretation, the court may examine other sources to discern legislative intent. *Id.* Here, the plain language of the Domestic Abuse Act directs the district court, in granting an OFP, to "give[ ] primary consideration to the safety of the

victim and the children." Minn. Stat. § 518B.01, subd. 6(a)(4). It also states that the court "may consider" relevant best-interests factors, but is not required to do so. *Id.*; *see* Minn. Stat. § 645.44, subd. 15 (2016) (stating that the term " '[m]ay' is permissive"). And the statute provides that, unlike in family-court proceedings relating to custody and parenting time, the district court need not make best-interests findings on factors that are not deemed relevant by the court. *See* Minn. Stat. § 518B.01, subd. 6(a)(4). Therefore, we conclude that in ordering temporary custody and parenting-time in connection with an OFP, the district court is not required to make statutory findings on the best-interests factors listed in section 581.17.

Our conclusion also comports with the policy rationale behind the OFP statute. "The Domestic Abuse Act was enacted . . . to provide an efficient remedy for victims of abuse." *State v. Errington*, 310 N.W.2d 681, 682 (Minn. 1981). The OFP statute's temporary custody and temporary parenting-time provisions allow the court to order immediate relief, ensuring the short-term safety of persons who have been subject to domestic abuse. *See* Minn. Stat. § 518B.01, subd. 6(a)(4). In contrast, custody proceedings under chapter 518, which address situations in which safety is not the immediate concern, require consideration of a number of factors enumerated in section 518.17 to determine the most appropriate custody and parenting-time arrangement for the child. *See* Minn. Stat. § 518.17(a)(1)-(12) (listing best-interests factors); *cf.* Minn. Stat. § 518B.01, subd. 6(a)(4) (stating that in an action for an order for protection, the district court "must not enter a parenting plan").

Father further argues that in this case the district court's findings do not demonstrate adequate consideration of the child's best interests relating to temporary custo-

dy and parenting time. Father points out that the OFP as to A.J. was based on a single incident, that mother had previously restricted parenting time, and that the guardian ad litem had not yet completed a home visit. We disagree. The very nature of ordering temporary custody and temporary parenting time in the context of an OFP reflects the paramount consideration of the child's safety, as assessed by the district court. Minn. Stat. § 518B.01, subd. 6(a)(4); *see Mechtel v. Mechtel*, 528 N.W.2d 916, 920 (Minn. App. 1995) (stating that relief under the domestic abuse act is discretionary with district court). And here, the district court's findings sufficiently support its determination that, in this proceeding, temporary custody was properly granted to mother.

## DECISION

The evidence is sufficient to sustain the district court's grant of the OFP for the benefit of mother and A.J. The district court did not improperly restrict the scope of cross-examination regarding the prior custody proceeding. And the district court did not err by ordering temporary sole legal and physical custody in favor of mother in conjunction with the issuance of an OFP without making custody findings under Minnesota Statutes section 518.17.

**Affirmed.**